Albright Unemployment Compensation Case.

Boyertown Burial Casket Company, Appellant, *v.*
Unemployment Compensation Board of Review.

Argued September 30, 1947. Before RHODES, P. J.,
HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Lewis H..Van Dusen, Jr.,* with him *Henry S. Drinker* and *Drinker, Biddle & Reath,* for appellant.

*Richard H. Wagner,* with him *T. McKeen Chidsey,* Attorney General, *R. Carlyle Fee,* Assistant Special Deputy Attorney General, and *Charles R. Davis,* Special Deputy Attorney General, for appellee.

OPINION BY ARNOLD, J., January 8, 1948:

In this unemployment compensation case the employes of the Boyertown Burial Casket Company, after failure of negotiations as to wages, hours and conditions of employment, went out on a strike on May 1, 1946.

Claimant, and his associates, were awarded unemployment compensation, after the expiration of the waiting period, under §402(d) of the Act as amended (43 PS §802), which reads: "An employe shall be ineligible for compensation for any week— . . . (d) in which his unemployment is due to a voluntary suspension of work resulting from an industrial dispute, at the . . . premises at which he . . . was last employed: Provided, That this disqualification shall apply only to . . . [the] period beginning with the day on which such suspension occurs and ending with (i) the last day of the fourth calendar week immediately following . . . such suspension . . ., or (ii) the day on which such suspension was terminated, whichever is the earlier." The employer as intervenor appeals.

Under the original Unemployment Compensation Act of December 5, 1936, P. L. 2897, §401(e), it was provided: "If the employe's total unemployment is due to a voluntary suspension of work resulting from an industrial dispute, then he shall be ineligible for compensation for a further waiting period of three weeks . . ."; thus making a waiting period of six weeks in the industrial dispute cases. In the same section it was provided: "Compensation shall be payable to any employe who is or becomes totally unemployed . . ." upon meeting cer-

tain conditions of earnings, registration for work, the making of a claim, and his ability and availability for work, after a waiting period of three weeks. The original Act, §4(s) defined "total unemployment" as meaning that an employe, during a particular week, has had no work for which wages are payable to him.

The original act was amended in 1942, P. L. 60; 1943, P. L. 337 and P. L. 717; and 1945, P. L. 1145,[1] and the Legislature adhered to the policy of paying unemployment compensation where a voluntary suspension of work resulted from an industrial dispute; but the waiting period was reduced to four weeks, and the method was changed by taking the proviso from §401 and placing the substance of it in §402(d) (43 PS §802)—"Ineligibility for compensation"; and in §401 the words "totally unemployed" were changed to "unemployed"; and in §4(u) "unemployment" was defined in substantially the same words as the original act defined "total unemployment."

Compensation is therefore payable to any employe who, after meeting the qualifications of §401, is unemployed, i. e., has performed no services for which remuneration was payable; unless he is rendered ineligible under §402 (43 PS §802) : *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898. Under §402(d) this claimant was only rendered ineligible for the waiting period following the voluntary suspension of work.

Appellant adduces many arguments that unemployment compensation ought not to be granted in the labor dispute cases, but we must again state that the Legislature possessed and exercised the sole power to determine the social and economic policies involved in unemployment compensation, and embedded them in the Unemployment Compensation Law as it was from time to time

---

[1] We are not here concerned with the 1947 amendment (abolishing payment of unemployment compensation in industrial dispute cases) Act No. 493 (Purdon's Legislative Service, page 1289).

amended. The definitions, the details, and the circumstances under which compensation would be paid, or would be denied, were for the Legislature alone. Unless prohibited by the Constitution its pronouncements are valid. The wisdom and the appropriateness of the statute are not for the judicial branch of the government: *English et al. v. Robinson Township School District*, 358 Pa. 45, 55 A. 2d 803.

The appellant makes various attacks on the constitutionality of the act as to the payment of compensation where a suspension of work results from an industrial dispute. Most, if not all, of these contentions are interwoven with the alleged increase of the intervenor's taxes or contributions to the fund under the "experience rating" provisions of the amendment of 1943, P. L. 639 (43 PS §781 et seq.). Separate and apart from the "experience rating" provisions we think the constitutionality of such a provision is beyond question. Without discussing in detail the various arguments of the appellant, reference is made to the following cases: *Lawrence Baking Co. v. Michigan Unemployment Compensation Commission* (Mich.) 13 N.W. 2d 260; *Tennessee Enamel Mfg. Co. v. Hake, Commissioner* (Tenn.) 194 S.W. 2d 468; *W. H. H. Chamberlin, Inc. v. Andrews, Industrial Commissioner, et al.*, (N.Y.) 2 N.E. 2d 22. (Affirmed by a divided court, 299 U.S. 515; Justice Stone absent, who voted with the majority in the *Carmichael* and *Charles C. Steward Machine Company* cases, infra.) See also *Fidelity-Philadelphia Trust Company et al. v. Hines, Secretary of Labor and Industry*, 337 Pa. 48, 10 A. 2d 553; *Commonwealth v. Perkins*, 342 Pa. 529, 21 A. 2d 45, affirmed by the United States Supreme Court, 314 U.S. 586; *Soble et al. v. Hines*, 347 Pa. 536, 32 A. 2d 742; *Department of Labor and Industry v. New Enterprise Rural Electric Coöperative, Inc.*, 352 Pa. 413, 43 A. 2d 90; *Carmichael v. Southern Coal & Coke Company*, 301 U.S. 494; *Charles C. Steward Machine Company v. Davis*, 301 U.S. 548. See 109 A.L.R. 1346, and 118 A.L.R.

1220, for annotations. We will hereafter consider the contention that the increase in intervenor's taxes or contributions to the fund under "experience rating" renders the Act, or the instant decision of the board, unconstitutional.

Appellant contends that the payment of unemployment compensation to persons unemployed because of industrial dispute, impinges upon what it calls the Commonwealth's traditional policy of neutrality in labor disputes, and argues that such payments give assistance to one party to the controversy, i. e., labor. It must be recognized that one of the factors in all labor disputes is the economic resources of the disputants. Therefore the withholding of unemployment compensation in such cases is a help to the industry, just as the payment of compensation is an aid to labor. The choice is with the Legislature, which may have been guided in its different choices by what it deemed an abuse of power by one party or the other.

Appellant contends that the real cause of the dispute was the demand for a "closed shop" (which was not granted in the final agreement), and that without this the other matters could have been resolved. It further contends that it made an offer on July 12, 1946,[2] which was refused, but embraced substantially the settlement and contract made on October 25, 1946; and that the strike was not concluded earlier than October 25 only for the reason that the unemployment payments did not cease under the law until that date. The board's first additional finding of fact [3] is based on substantial, cred-

---

[2] This offer was made *after* the expiration of claimant's waiting period.

[3] The board's first additional finding of fact: ". . . Sometime in April [before the strike] the company offered a wage increase of 8c an hour for hourly workers and an 8% increase for piece workers, . . . On or about July 12, . . . the offer was raised to 12c for hourly workers and 12% for piece workers (exclusive of 10% of the piece workers who were to receive an increase of only 5%). . . . In the

ible and competent testimony, and is binding on us under §510 (43 PS §830). It is at variance with appellant's contentions and shows that following the strike in May the appellant made an offer in July substantially increasing the wages above any offer made before the strike, and that in the final settlement of October 25, 1946, the industry agreed to an increase over its July offer of 2¢ per hour for hourly workers and 2% for piece workers. The argument that the claimant and his associates *had to* accept the offer made in July, or be deprived of unemployment compensation, cannot prevail. The benefits of the Act are not conditioned upon the labor dispute being resolved in favor of the claimant and his associates. The argument must also fail that since the strike was settled immediately upon the claimant and his associates becoming ineligible for further compensation for that year,—they must be denied compensation because they did not sooner settle, on the theory that this showed a lack of good faith. The intervenor has no finding of fact that the strike was settled because of the expiration of benefits. There is no doubt that the labor dispute was bona fide, and it may, or may not, be that the termination of compensation rendered it impossible for the claimant and his associates longer to hold out for better terms. Nothing in the Act deprives the claimant of compensation for any of these reasons, and neither the intervenor nor the courts may read into the Act such a proviso.

Appellant contends that although payment of compensation in the industrial dispute cases is a policy which is constitutional, yet it must be denied in this case because the payment thereof will cause the intervenor's tax or contribution to the fund to be increased under "experience rating."

───────

agreement [of October 25, 1946, settling the strike] the union won an increase of 14% [¢] an hour for hourly workers and 14% for piece workers (exclusive of the 10% mentioned above, whose increase amounted to 7%) . . ."

"Experience rating" did not come into existence until the amendment of 1943, P. L. 639 (43 PS 781 et seq.): It was not adopted as a corollary to the policy of paying compensation where there was a voluntary suspension of work due to a labor dispute, for that policy had already existed for six years.

Prior to 1943 intervenor's tax was 2.7%. "Experience rating" effected, according to a formula, an *adjustment* of the contribution, which *reduced* this rate, the reduction to become greater as the "unemployment" of the employer's workmen became less. It was a reward and not a penalty, for without "experience rating" the employer's tax would remain at 2.7%, and in the subsequent amendments of 1943 and 1945 its tax was fixed at this rate *unless* adjusted.

Since we hold that it was constitutional prior to 1943, before "experience rating" and when the tax was 2.7%, to provide unemployment compensation in the industrial dispute cases,—it remained equally constitutional after the statute was amended to provide for the reward or adjustment of the employer's contribution under the formula of "experience rating." The adoption of the plan of "experience rating" does not amend, modify or limit the benefit sections of the statute: *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 549, 45 A. 2d 898. Therefore, if it be unconstitutional to have "experience rating" affected by the payment of compensation in the industrial dispute cases, the "experience rating" provisions must fall, and in this event, by the Act of 1943, supra, and all subsequent amendments, the intervenor's taxes were and are fixed at 2.7%. We may also point out that the attack of the intervenor is not upon the levying of the tax, but its complaint actually concerns the disposition of the funds derived from the levy.

Decision affirmed.