## Forsht Unemployment Compensation Case.

Argued April 13, 1954. Before HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Pauline M. Forsht,* appellant, in propria persona, submitted a brief.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY HIRT, J., July 13, 1954:

Claimant had been employed by Sylvania Electric Products, Inc., for about three years. Throughout that period she worked on the first shift from 6:55 a.m. to 3:25 p.m. Her last day of employment was July 17, 1953. She was injured in an accident on that day and was unable to work for about two months thereafter. She notified her employer of the accident and of her disability, and in reply was instructed to send in a doctor's certificate whenever she was able to resume work.

Claimant had recovered sufficiently to return to her work on September 21, 1953. But when she gave notice of that fact to her employer, she inquired whether

there was an opening on the second shift. She preferred to work on that shift from 3:30 p.m. to midnight because her husband would then be home and could care for their two small children while she was at work. After she was informed that there was no opening on the second shift she did not offer to return to the first shift, her regular work period during her prior employment. Moreover, she did not make any effort to return to her employment with the Sylvania Company at any time thereafter. Instead she filed an application for unemployment compensation benefits. Her claim for the week ending September 28, 1953 was disallowed, in succession, by the Bureau, the Referee, and the Board of Review. The ground assigned in each instance for the disallowance was that claimant had voluntarily terminated her employment with Sylvania Products Inc., without good cause, within the meaning of Section 402(b) of the Unemployment Compensation Law, the Act of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §802.

In the course of an interview with a representative of the Bureau, claimant made and signed a statement to this effect: "I was offered a first trick job but I could not accept it because my oldest child started to school and had no one to get him ready for school. Can work second trick because husband would be home then. He works first trick. Took a voluntary lay off until second trick work is available in any department." She gave substantially the same reason in her appeal from the Bureau's decision but she shifted her ground somewhat in her testimony before the Referee by stating: ". . . if I have to I will work first shift but I don't want to." She gave as her reason that her husband couldn't take care of the children while she worked the first shift and she "would have to hire someone." Her mother had taken care of the children during claim-

ant's prior employment on the first shift but apparently was not able to resume that responsibility. However, at no time did she notify her employer that she was willing to go back to work on the first shift and she did not make a sincere effort to resume work with her former employer on any shift. Work was available to claimant on the first shift and the evidence clearly supports this finding of the Board of Review: "On September 21, 1953, the claimant telephoned her employer that she could return to work. Her employer informed her she could continue working on her former job, but she refused to return to first shift work because she had to care for her two children."

The reason assigned by claimant for not resuming her work on the first shift is not good cause under the amendment of §402(b) by the Act of August 24, 1953, P. L. 1397, which provides: "An employe shall be ineligible for compensation for any week . . . (b) In which his unemployment is due to voluntarily leaving work without good cause . . . provided, with respect to the determination of suitable work under section four (t), [43 PS §753] marital, filial and domestic circumstances and obligations shall not be deemed good cause within the meaning of this act . . ." The burden was on claimant not only to preserve her employment during her enforced absence but to offer in good faith to return to her work on the first shift, after her recovery, on notice that there was no opening on a shift more convenient to her. There can be no good cause which does not rest on good faith. *Brilhart Unemploy. Compensation Case,* 159 Pa. Superior Ct. 567, 49 A. 2d 260. Cf. *Wolfson Unemploy. Compensation Case,* 167 Pa. Superior Ct. 588, 76 A. 2d 498. In the present case both claimant and her employer understood that her enforced idleness, due to her disability, was temporary and her contract of employment continued

until terminated by her by the manifestation of an unequivocal intention to abandon the labor force. In principle this case has something in common with *Flannick Unempl. Compensation Case*, 168 Pa. Superior Ct. 606, 82 A. 2d 671. Work on the first shift was suitable work, and claimant could refuse to return to it because of her family obligations only by terminating her employment without good cause under the 1953 amendment of §402(b), thus barring her right to unemployment compensation.

Decision affirmed.