Spotts Unemployment Compensation Case.

Argued September 30, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*David Cohen,* with him *Phyllis C. Halpern,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY WRIGHT, J., November 9, 1954:

In this unemployment compensation case Florence Z. Spotts (hereinafter referred to as claimant) was denied benefits by the bureau, the referee, and the Board of Review on the ground that she voluntarily terminated her employment without good cause under the provisions of Section 402 (b) of the Unemployment Compensation Law. Claimant has appealed to this Court contending (1) that she did not voluntarily leave work; (2) that her unemployment was not due to her voluntarily leaving work; and (3) that the 1953 amendment[1] to Section 402 (b) of said statute is unconstitutional.

Prior to November 17, 1953, claimant was employed by Sylvania Electric Products, Inc., in Emporium, Pennsylvania. She is married and has three children aged respectively six, five, and three years. Her original employment was on the second shift, from 4 p.m.

---

[1] Act of August 24, 1953, P. L. 1397 section 4, 43 PS 802.

to 12:30 a.m. Due to lack of work on this shift, claimant received 40 hours advance notice that she was to be laid off from her usual work of loading tabulating machines. During this 40-hour period she attempted to exercise her seniority rights in order to obtain other work on the second shift. However, an employe with greater seniority obtained the position claimant was seeking, and claimant was thereupon notified that work would be available for her on the first shift from 7 a.m. to 3:30 p.m. Claimant then "accepted a voluntary lay-off", because she had no one to stay with her three small children during day shift hours.

The relevant provision of the Unemployment Compensation Law (1953 amendment italicized) reads as follows: "An employe shall be ineligible for compensation for any week . . . (b) In which his unemployment is due to voluntarily leaving work without good cause, . . . provided, with respect to the determination of suitable work under section four (t), *marital, filial and domestic circumstances and obligations shall not be deemed good cause within the meaning of this act . . .*" Prior to the enactment of the 1953 amendment, we had ruled that "good cause"[2] need not be directly connected with the employment, consistently recognizing that family obligations might constitute good cause. See *Teicher Unemployment Compensation Case,* 154 Pa. Superior Ct. 250, 35 A. 2d 739 (1944); *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898 (1946); *Mooney Unemployment Compensation Case,* 162 Pa. Superior Ct. 183, 56 A. 2d 386 (1948); *Hamilton Unemployment Compensation Case,* 172 Pa. Superior Ct. 413, 94 A. 2d 63 (1953); *Quiggle Unemployment Compensation*

---

[2] This term was inserted in Section 402 (b) by the 1942 amendment, Act of April 23, 1942, P. L. 60.

*Case,* 172 Pa. Superior Ct. 430, 94 A. 2d 367 (1953).
The change in the language of the statute indicates a
change of legislative intent: *Ogilvie's Estate,* 291 Pa.
326, 139 A. 826; *Midvale Co. v. Unemployment Com-
pensation Board of Review,* 165 Pa. Superior Ct. 359,
67 A. 2d 380.

Claimant's first contention is that she was com-
pelled to cease work, not because of her changed cir-
cumstances, but because of the inability of the com-
pany to provide continued employment "on the same
terms as before". The answer is that a change in
shifts cannot be considered a change in the terms of
employment. As we said in *Mehlbaum Unemployment
Compensation Case,* 175 Pa. Superior Ct. 497, 107 A.
2d 141: "We must not lose sight of the purpose of the
Act, as expressed in the declaration of public policy.
It was designed to benefit those persons who became
unemployed through no fault of their own . . . This
public policy must be considered in construing every
provision of the law and in determining eligibility for
compensation in every case . . . The Act must be con-
strued sensibly, so that absurd results may be avoided".
To suggest that claimant did not "voluntarily" cease
work, in the face of the offer of continued employment
on a different shift, is to give the situation an unreal-
istic interpretation. It is clearly apparent that the
employment relationship was severed by claimant and
not by her employer, and claimant's reason for the
severance cannot be considered good cause under the
express language of the 1953 amendment.

Claimant next contends that, even though she may
be found to have voluntarily quit work, her unemploy-
ment was not "due to" her act in voluntarily leaving,
but was caused by a change in the economic circum-
stances of the company. This contention is but a re-
phrasing of claimant's first position. Reliance is

placed upon *Campbell Unemployment Compensation Case,* 175 Pa. Superior Ct. 592, 106 A. 2d 687, but that case is not controlling. In the *Campbell* case we held that an employe who was laid off because of a slackening of work, and thereafter went on a pension, was not precluded from receiving benefits so long as his unemployment was due to the lay off rather than to his retirement. The situation presented in the case at bar is one in which claimant refused continued employment at available work because her family duties required her to stay at home during the daytime.

We had occasion to consider the 1953 amendment recently in *Forsht Unemployment Compensation Case,* 175 Pa. Superior Ct. 646, 106 A. 2d 871. In that case, claimant was employed on the first shift. She was injured in an accident and was unable to work for two months. Upon recovery, she applied for employment on the second shift so that her husband could care for their two small children while claimant was at work. Employment was not available on the second shift but was still available on the first shift. Claimant did not notify her employer that she was willing to go back to work on the first shift. Speaking through Judge HIRT, we said: "The reason assigned by claimant for not resuming her work on the first shift is not good cause under the amendment . . . Work on the first shift was suitable work, and claimant could refuse to return to it because of her family obligations only by terminating her employment without good cause under the 1953 amendment of section 402 (b), thus barring her right to unemployment compensation". In the case at bar, claimant'ᵴ reason for refusing work on the first shift was the same as that given in the *Forsht* case. And, as there pointed out, this reason has been the subject of legislative enactment excluding claimant from benefits.

Claimant contends finally that the 1953 amendment violates public policy and is in contravention of Article III, Section 7, of the Constitution of Pennsylvania and the Fourteenth Amendment to the Constitution of the United States. Her position is that the amendment discriminates against women workers who are married and have children. But the provision in question is not directed to or against any specific group or class of persons. It applies to everyone who comes within the coverage or scope of the Unemployment Compensation Law. Under such circumstances it cannot be said to be a local or special law prohibited by Article III, Section 7, of our Constitution, nor does it offend against the guaranty of equal protection of the law contained in the Fourteenth Amendment of the Constitution of the United States. "It thus appears from the foregoing . . . that the Pennsylvania Unemployment Compensation Law is not a special or local Act 'regulating labor, trade, mining and manufacturing'; and that the classifications made by the Act are valid and proper. Therefore, we find that the said Act as we have heretofore construed it does not violate either the Fourteenth Amendment to the Constitution of the United States or section 9 of Article I, section 7 of Article III, or section 1 of Article IX of the Pennsylvania Constitution": *Boyertown Burial Casket Co. v. Commonwealth,* 366 Pa. 574, 79 A. 2d 449. And see *Seifing Unemployment Compensation Case,* 159 Pa. Superior Ct. 94, 46 A. 2d 598.

Our conclusion is that it was not the intention of the legislature to permit an employee to insist upon working a particular shift because of marital, filial, or domestic circumstances. The wisdom and appropriateness of legislation are not for the judicial branch of the government: *Albright Unemployment Compensation Case,* 162 Pa. Superior Ct. 98, 56 A. 2d 390. The

general declaration of public policy must yield to the specific provisions of Section 402: *Midvale Co. v. Unemployment Compensation Board of Review,* supra, 165 Pa. Superior Ct. 359, 67 A. 2d 380.

Decision affirmed.