MARY A. GRAY *v.* DOBBS HOUSE, INC. AND REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION.

[No. 2-475A86. Filed December 9, 1976.]

*Richard D. Boyle, Richard L. Zweig,* Legal Services Organization of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter L. Lockhart,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Mary Gray (Claimant) was denied unemployment benefits. She appeals.

The Review Board determined that although Claimant had "possibly good personal reasons" for leaving her employment, those reasons did not constitute "good cause in connection with the work". The controlling statutory provision disqualifies a claimant if he has left his employment voluntarily "without good cause in connection with the work". Ind. Ann. Stat. 22-4-15-1 (Burns Code Ed. 1976 Supp.)

The facts are not materially disputed. Claimant on or about May 26, 1974 accepted employment as a cook with Dobbs House Restaurant located at Weir Cook Airport, Indianapolis. Her initial employment was of a somewhat untenured nature, in that she substituted for various full-time employees as they took annual vacations. Throughout the summer months, Claimant worked the day shift, 6:00 a.m. to 3:00 p.m. These working terms and conditions easily accommodated her transportation and domestic concerns. Having no automobile, she was able to secure a ride to and from work with a fellow-worker who worked the same shift, and she was able to satisfactorily arrange for supervision of her young children. Near the end of August, 1974 when Claimant's vacation period employment was essentially concluded, her employer without much, if any, discussion of terms and conditions, assigned Claimant as a permanent employee with similar responsibilities as before, to the swing shift, 2:30 p.m. to 10:30 p.m. Claimant accepted the employment and attempted to work this shift, but because of transportation difficulties and expense, and compelling parental obligations, she terminated her employment on September 6, 1974.

From these facts, the Board found that Claimant terminated her employment due to a lack of adequate transportation to work and that the cost of cab fare and child care made continuation of employment impractical and that such reasons did not constitute "good cause in connection with the work".

Claimant takes issue with the Review Board's interpretation of the disqualifying provision of 22-4-15-1, *supra,* and its application to the facts here.

## I.

## PARENTAL OBLIGATIONS AND TRANSPORTATION DIFFICULTIES ARE NOT GOOD CAUSE WITHIN MEANING OF THE ACT

Claimant argues that the plain import of 22-4-15-1, *supra*, compels a conclusion that parental obligations and transportation problems constitute "good cause", and that since the Board found that she left for these reasons, she is entitled to benefits as a matter of law.[1]

### (A) PARENTAL OBLIGATIONS

We cannot agree with the parental obligation portion of Claimant's argument. In *Geckler* v. *Review Board* (1963) 244 Ind. 473, 477, 193 N.E.2d 357, 359 the court said:

"As a general rule, the cases hold that 'good cause[,]' which justifies the voluntary termination of employment and entitles the claimant to compensation, *must be related to the employment, and thus be objective in character.* The cases have not extended the construction 'good cause' to include purely personal and subjective reasons which are unique to the employee, . . . ." (Emphasis supplied) *Accord, Lewis* v. *Review Board* (1972), 152 Ind. App. 187, 282 N.E.2d 876.

Thus, assuming that a claimant seeking unemployment benefits after terminating employment qualifies pursuant to the basic eligibility requirements of Ind. Ann. Stat. §§ 22-4-14-1 thru 3 (Burns Code Ed. 1974 and Supp. 1976),[2] he must

---

1. We note as a point of departure, that there is a split of authority as to what constitutes "good cause". *See* Anno. 35 A.L.R.3d 1129 (1971). Some of the variance can be attributed to differences in statutory language. Compare *Bushko* v. *Unemployment Compensation Board of Review* (1961) 196 Pa. Super. 559, 175 A.2d 914 and *Kelter* v. *Unemployment Compensation Board of Review* (1956) 181 Pa. Super. 67, 121 A.2d 907 with *Spotts* v. *Unemployment Compensation Board of Review* (1954) 176 Pa. Super. 484, 109 A.2d 212 and *Mee's Bakery, Inc.* v. *Unemployment Compensation Board of Review* (1948) 162 Pa. Super. 183, 56 A.2d 386. See also *Ingress-Plastene, Inc.* v. *Review Board* (1968) 143 Ind. App. 95, 238 N.E.2d 490.

2. Basically these sections provide, insofar as pertinent, that an unemployed individual is eligible for benefits only if he has made a

further demonstrate that the general disqualification provision of 22-4-15-1, *supra,* is inapplicable. This means, for example, in the instance of a claimant who has terminated his employment, that he must demonstrate: (a) that his reasons for abandoning his employment were such as would impel a reasonably prudent man to terminate under the same or similar circumstances; and (b) that these reasons, or causes, are objectively related to the employment. *See Garrelts* v. *Employment Division* (Ore. App. 1975), 535 P.2d 115.

Although parental obligations no doubt constitute good personal reason for termination of employment, they nevertheless lack the objective nexus with employment envisioned by the Act. *Cf. Carter* v. *Employment Security Commission* (Me. 1976), 356 A.2d 731.

Claimant, citing *Hacker* v. *Review Board* (1971), 149 Ind. App. 223, 271 N.E.2d 191, asserts that if she had refused employment on the evening shift at the time it was made available to her, rather than to have tried accommodating the shift change, she would not have been rendered ineligible.

It is to be noted that in *Hacker, supra,* the employee had been involuntarily terminated in that her night shift had been closed down and she lacked sufficient seniority for transfer to another shift. Notwithstanding that the employee had restricted her employment to the night shift and would no doubt have rejected a "shift transfer" even were it available, the consideration before the court, as limited by the findings of the Board, involved Ind. Ann. Stat. 22-4-15-2 (Burns Code Ed. 1974)[3] and was one of "work availability" following an involuntary lay-off. The holding in *Hacker,* that claimant was "available for work" despite limiting her availability to night shift work because of parental obligations,

claim for benefits (22-4-14-1), has registered for work and has subsequently reported with such frequency as directed (22-4-14-2), and is physically and mentally able to work, is available for work and is making an effort to secure work (22-4-14-3).

3. IC 22-4-15-2 renders a benefit applicant ineligible if he fails without good cause either to apply for available suitable work when so directed or to accept suitable work when found for and offered to him.

is therefore not determinative of the 22-4-15-1 question before us.

An over-simplified analysis of the eligibility and disqualification provisions discloses that 22-4-14-3 contains a threshold requirement that an employee must be "physically and mentally able to work, is available for work [and is] making an effort to secure work." Under this basic eligibility provision one is not necessarily unavailable for work merely because he or she limits the shift to be worked because of parental obligations. *Hacker* v. *Review Board, supra.*

Under 22-4-15-2, a claimant, who may be otherwise eligible for benefits and not disqualified by reason of 22-4-15-1, loses that eligibility when "he fails without *good cause,* either to apply for available suitable work . . ., or to accept suitable work when found for and offered to him. . . ." (Emphasis supplied). This provision does not render one disqualified merely because he rejects an offered job, the hours of which are incompatible with his parental obligations. The two sections 22-4-14-3 and 22-4-15-2 are thus related. However, they are, with reference to "good cause," separate and distinct from the disqualification provision of 22-4-15-1. Thus, an employee who may be "available for work" within the meaning of 22-4-14-3 and who, for "good cause," within the meaning of 22-4-15-2, may refuse work offered, is nevertheless ineligible for benefits to the extent and for the period prescribed by 22-4-15-1 if he has quit work "without good cause in connection with the work."

Claimant argues, however, that the Legislature could not have intended such ironic and inconsistent results, and that therefore the "good cause" provision of 22-4-15-1 must be the equivalent of "good cause" under 22-4-15-2.[4]

---

4. The "good cause" provision of 22-4-15-2 is allied with the work suitability considerations of the same section. It states:
"(a) In determining whether or not any such work is suitable for an individual, the division shall consider the degree of risk involved to such individual's health, safety and morals, his physical fitness and prior training and experience, his length of unemployment and prospects for securing local work in his customary occupation, and

Despite the rationality of Claimant's position, we are unable to adopt it. Rather, because of the difference in language between the basic disqualification provision of 22-4-15-1 and the work availability provisions of 22-4-14-3 and 22-4-15-2, we feel compelled to adopt the answer given by the North Carolina Supreme Court when it was faced with the identical question, though in a converse factual situation. In *In Re Watson* (1968), 273 N.C. 629, 639, 161 S.E.2d 1, 10, that court held:

> "When, in two paragraphs of the same section of the statute, the legislature provides for disqualification of a claimant who leaves his old job without 'good cause attributable to his employer' and for disqualification of one who rejects new work without 'good cause' we think it evident that the legislature, for some reason satisfactory to it, intended to make the difference between the two situations which its language expresses. . . . The wisdom of such distinction is for the legislature, our authority being merely to determine the meaning of the words it used."

We realize that our analysis acknowledges distinctions which may seem to result in harsh consequences, but our primary function when confronted with a duty to interpret legislative mandates, is to effectuate the plain import of statutes, if possible. The statutes here contain distinctions by which we must abide.

### (B) TRANSPORTATION INCONVENIENCE AND EXPENSE

Claimant argues that transportation was not available without unreasonable expense and that this fact constitutes "good cause in connection with the employment". It is a question of first impression in this jurisdiction. Claimant urges that we adopt *Bateman* v.

the distance of the available work from his residence: Provided, however, That work under substantially the same terms and conditions under which he was employed by a base-period employer, which is within his prior training and experience and physical capacity to perform, shall be deemed to be suitable work unless the claimant has made a bona fide change in residence which makes such offered work unsuitable to him because of the distance involved."

*Howard Johnson Co.* (La. 1974), 292 So.2d 228, as dispositive of the issue. In *Bateman,* the court, in applying similar statutory language, held that transportation difficulty was "good cause in connection with the employment", especially where, as here claimed, a substantial portion of daily wages was expended for transportation to and from work.

Other jurisdictions have reached a contrary result which we deem more compatible with Indiana law. In *Moya* v. *Employment Security Commission* (1969), 80 N.M. 39, 450 P.2d 925 and *Zorrero* v. *Unemployment Security Insurance Appeal Board* (1975), 47 Cal. App. 3d 434, 120 Cal. Rptr. 855, transportation to and from work was held to be the responsibility of the employee in the absence of some custom or contract to the contrary. Accordingly we reject Claimant's assertion relative to transportation.

## II.

### TERMINATION NOT RENDERED STATUTORILY INVOLUNTARY BY COMPELLING PERSONAL CIRCUMSTANCES

Claimant urges us to accept the proposition that one who capitulates to domestic, financial and transportation pressures by terminating work does so involuntarily; and that such termination is patently with "good cause" within the meaning of the Act. Claimant cites as supportive authority *Hollingsworth Tool Works* v. *Review Board* (1949), 119 Ind. App. 191, 195, 84 N.E.2d 895, 897, wherein the court stated:

> "The pressure of necessity, of legal duty, or family obligation, or other overpowering circumstances, and [claimant's] capitulation to them, may transform what is ostensibly voluntary unemployment into involuntary unemployment."

In *Hollingsworth,* the claimant left work in an industrial area and moved, with his ailing wife, to a small town which

had little industrial activity. Since the wife had close friends within the community, the move was motivated by the prospects of receiving better care for her. The Court's decision affirming a benefit award was premised, however, upon the permissive waiver of disqualification contained in the 1947 Act, not upon the absence of disqualifying circumstance. As hereinafter noted that waiver provision was stricken down as unconstitutional. *State ex rel., Standard Oil Co.* v. *Review Board* (1951), 230 Ind. 1, 101 N.E.2d 60. *Hollingsworth,* has, therefore, little or no significance with reference to a disqualifying termination "without good cause connected with the work".

For the Claimant to be eligible under this proposition, she must have shown not only that the subjective motivation for leaving work was involuntarily induced, but that the pressures or demands which compelled her to quit were work connected. In other words, the extrinsic forces, which bear upon a person's will and transform a free exercise thereof into involuntary submission, must be causally connected with the employment.

Notwithstanding the rationality of Claimant's argument relative to subjective involuntariness, we may not confer benefits upon that basis. To do so would contravene the unambiguous meaning of the statutory requirement that good cause be in connection with the employment. *Cf. Rogers* v. *Doyal* (La. App. 1968), 215 So. 2d 377. If the law is to be otherwise, it is for the Legislature to make such a fundamental change. Claimant contends that our General Assembly has demonstrated its intent to effect just such fundamental change.

## III.

## RECENT REPEAL OF AND AMENDMENT TO PORTIONS OF ACT DID NOT MANIFEST INTENTION TO CONSIDER PARENTAL OBLIGATIONS AS GOOD CAUSE

Claimant argues that inasmuch as the Legislature in 1971 repealed a section of the Act which specifically disqualified employees if they voluntarily terminated employment because of parental obligations it ostensibly intended such obligations to constitute "good cause in connection with the work".

In construing statutes, legislative intent, if discernible, is to be given effect. *See, Allen County Department of Public Welfare* v. *Ball Memorial Hospital Assn.* (1969), 253 Ind. 179, 252 N.E.2d 424; *Gross Income Tax Divn.* v. *Crown Development Company, Inc.* (1952), 231 Ind. 449, 109 N.E.2d 426. It is Claimant's position that the legislative history of the provision in question discloses that the clear intent of the General Assembly was to confer benefits upon an employee who leaves employment due to parental obligations. We do not agree.

In 1947 the Legislature enacted the forebear of 22-4-15-1. This early provision declared an individual ineligible for benefits if he ". . . left work voluntarily without good cause. . . ." Acts 1947, Ch. 208, § 1501. At the same time the Legislature enacted a specific section denying benefits to claimants who left work "voluntarily to marry or because of marital, parental, filial, or other domestic obligations . . .", but the prohibition was permitted to be waived upon a showing of good cause. Acts 1947, Ch. 208, § 1507 (a). In *State ex rel. Standard Oil Company* v. *Review Board, supra,* however, the discretionary waiver proviso of § 1507 (a) was held to be an unconstitutionally broad delegation of legislative authority.

Thereafter, the 1953 General Assembly changed § 1507 to deal solely with discharge for dishonesty and added a new § 1508 to the 1947 Act. Acts 1953, Ch. 177, §§ 19-20. The new

§ 1508 disqualified an employee who "left work voluntarily to marry . . . or because of other marital obligations." It did not contain any reference to "parental, filial, or other domestic obligations"; nor did it contain any provision for discretionary waiver of the disqualification. The basic general disqualification section, § 1501, remained unchanged.

In 1965, the Legislature amended the specific disqualification section, § 1508 so that once again an employee who left work "voluntarily because of parental obligations" was disqualified. Acts 1965, Ch. 190, § 10. The general ineligibility provision, § 1501, insofar as pertinent, remained in the same language as when enacted in 1947. During the period 1953-1965, therefore, it was arguably possible to construe the Act to permit benefit recovery by one who left employment because of parental, as opposed to marital, obligations.

Thereafter, in 1967, the general ineligibility portion of the Act § 1501 was altered by an amendment which stated that a worker was ineligible if he "left work voluntarily without good cause attributable to the employer. . . ." Acts 1967, Ch. 310, § 19. Consequently the claimant bore the burden of meeting and overcoming this more stringent general disqualification provision even without regard to whether he might be otherwise disqualified by reason of one or more of the specific disqualification sections of the Act, which specific disqualifications remained in the law. In *Ingress-Plastene, Inc.* v. *Review Board, supra,* the specific "parental obligation" disqualification was solely dispositive of a claim similar to that made here. The court there, however, confronted Review Board findings which dealt with the general disqualification provision prior to its "cause attributable to the employer" amendment in 1967.

Finally, in 1971 the Legislature amended the pertinent general ineligibility language of 22-4-15-1 to its present form. Acts 1971, P.L. 355, § 36. This amendment replaced the condition that good cause must be "attributable to the employer"

with the condition that it be "in connection with the work". Furthermore, the section which specifically disqualified a claimant who voluntarily terminated his employment because of marital or parental obligations was repealed. Acts 1971, P.L. 355, § 47. This repeal, the Claimant asserts, implies that parental obligation now constitutes "good cause" within the meaning of the present § 22-4-15-1.

During the period 1967-1971 the specific disqualification relating to parental obligation co-existed with the general disqualification which referred to cause "attributable to the employer". Claimant reasons that the Legislature undoubtedly thought that were it not for the specific disqualification provision, an employee who left because of marital or parental obligations would be entitled to benefits and that, therefore, repeal of the specific disqualification in 1971 conferred benefit entitlement in such situations.

We do not view the repeal of the specific disqualification to manifest the intent ascribed by Claimant. To the contrary, a more plausible inference to be drawn from the legislative history is that the 1971 General Assembly realized that the specific disqualification provision was a redundancy in light of the pervasiveness of the general disqualification section; that the Legislature recognized that the general disqualification section embraces all solely "domestic" obligations since such obligations standing alone, without some traditional employer-employee relationship factor intervening were not "attributable to the employer," and are not work connected.

We reject Claimant's argument notwithstanding the policy which underlies the basic Act. Ind. Ann. Stat. 22-4-1-1 (Burns Code Ed. 1974). We recognize the obligation, when confronted with an interpretative task, to liberally construe unemployment compensation provisions so as to accomplish the purpose of relieving severe consequences resulting from unemployment through no fault of the employee. *See Renwanz* v. *Review Board* (1971), 148 Ind. App. 540, 267 N.E.2d

844. However, we cannot legitimately construe the language of the Act in a well-intentioned attempt to permit benefits to every person who is unemployed because of justifiable, but subjective, reasons which are not work related. To do so would be to torture the clear words of the statute beyond the tolerance level of the law, as well as to place an inequitable burden upon employers—those who fund the substantial portion of the unemployment insurance program.

Obviously, it would be unfair to require all employers to underwrite a program for claimants who allegedly desire to work but who have never entered the labor market because of compelling domestic obligations. It would be likewise unfair to require employers to fund a program for claimants who have attempted to work but have been unsuccessful because the employment duties interfere with necessitous parental obligations. *See Judson Mills* v. *Unemployment Compensation Comm'n*. (1944), 204 S.C. 37, 28 S.E.2d 535. The relief available to such claimants may very well lie within other social programs designed for persons whose income, if any, is inadequate to meet basic human needs.

## IV.

### SHIFT CHANGE AS GOOD CAUSE IN CONNECTION WITH WORK MAY NOT BE CONSIDERED

Claimant finally argues that termination of her employment was "in connection with the work" since the unilateral shift change by the employer was the *sine qua non* of the subjective reasons which forced her to quit work.

We are procedurally precluded from addressing this argument.

Even were we to assume an implied agreement justifying reasonable expectation on Claimant's part that her hours would remain fixed, *see Wade* v. *Hurley* (1973), 33 Colo. App. 30, 515 P.2d 491, the argument's premise of a violation of that

expectation as the cause of termination ignores the factual findings of the Review Board.

We may concede that upon the evidence submitted it may have been reasonable for the Board to find that Claimant's termination was directly attributable to the alleged shift change. However, it was equally as reasonable, there being sufficient supportive evidence of record, for the Board to have found, as it did, that Claimant left her employment because of subjective domestic obligations and transportation problems. Therefore, we must accept as fact that Claimant voluntarily terminated her employment because of subjective reasons and for no other. *Gold Bond Building Products Divn.* v. *Review Board* (1976), 169 Ind. App. 478, 349 N.E.2d 258.

The decision and award of the Review Board is affirmed.

Staton, P.J. (participating by designation) concurs and files separate opinion; White, J., dissents.

## CONCURRING OPINION

STATON, P.J.—I concur with Judge Sullivan's rationale that *Hacker* v. *Review Board* (1971), 149 Ind. App. 233, 271 N.E.2d 191 is not determinative of the 22-4-15-1 question before us. However, I would dissent from any interpretation of Judge Sullivan's rationale which would limit or prohibit the traditional employer-employee relationship factor of permitting an employee to place certain conditions upon his or her employment. In *Hacker,* the employee had placed a condition upon her employment—she would be able to work only on the night shift. This is a working condition. If it is changed by the employer, the employee is entitled to the "good cause" status, since it is a change in connection with the work agreed to be performed by the employee. In the case before us, Mary Gray did not make the hours that she would be willing to work known to her employer nor did she make time of employment a condition of her employment before

she quit so that it would be connected with her work. An employer is entitled to notice of any factor or condition which will affect the work to be performed by an employee. If this notice is not given on the employment application, as it was in *Hacker,* or to some supervisor responsible to the employer prior to termination, the traditional employer-employee relationship factor does not exist. The factor must be in connection with the work which is changed and results in a termination.

I would further dissent from any interpretation of Judge Sullivan's rationale which would exclude domestic or parental obligations from being good cause or a condition that could be connected with work. Judge Sullivan's rationale is based upon the finding of the Review Board that Mary Gray terminated her employment ". . . due to a lack of adequate transportation to work and that the cost of cab fare and child care made continuation of employment impractical and that such reasons did not constitute 'good cause in connection with the work.'" He was bound by this finding which is supported in the record. Had the Review Board found that termination was due to a shift change, the result of this opinion, as it affects Mary Gray, would have been different.

NOTE.—Reported at 357 N.E.2d 900.