Stephen MAROZSAN, Appellant
(Claimant Below),

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION

and

University of Notre Dame, Appellees.

No. 2-781A235.

Court of Appeals of Indiana,
Fourth District.

Jan. 12, 1982.

Joel (Jay) Lauer, Jr., Legal Services Program of Northern Indiana, Inc., South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellees.

CONOVER, Judge.

Stephen Marozsan appeals from the holding of the Review Board of the Indiana Employment Security Division, which found that he had voluntarily left his employment without good cause and thus was ineligible for unemployment compensation. He assigns as error that the decision of the Review Board is contrary to law.

We affirm.

FACTS

Any decision of the Review Board is conclusive and binding upon us as to all questions of fact. Ind.Code 22-4-17-12. In this case the Review Board found the facts to be as follows:

"FINDINGS: The evidence shows that the claimant worked for this employer for

the period from October 11, 1979, to April 28, 1980, as a security guard. His rate of pay at the time of separation was $4.23 per hour. The evidence further shows that the claimant voluntarily left his employment on April 28, 1980. The claimant felt he was having difficulty in getting the cooperation from co-workers. Claimant felt the other officers resented him and were cold. Claimant brought his feelings to the attention of his immediate supervisor and then to the attention of the Security Director. When the claimant confronted the other officers with his feelings, he was informed that he was hired at a higher rate of pay, did not have to take a typing test, and was too friendly with the students. The Security Director talked to the claimant during his shift of work; he was given an opportunity to read an employee manual. The claimant requested an increase in the number of hours of work and thereafter began his work at a gate. The Security Director informed the claimant that his conduct at the gate and his managing of the gate were questionable. Claimant felt he could not be aloof from the student community. The claimant had discussions with the Security Director concerning the claimant's judgment, tactfulness, and ability to work in harmony. The Security Director told the claimant that he did not think it was going to work out and that he should seek employment elsewhere. The claimant had had difficulties with escort procedures and student passes. The employer felt it improper that the claimant had solicited legal assistance from law students. Further, there had been complaints from two (2) members of the Notre Dame community about the claimant's handling of the gate. The claimant indicated that he was having problems at home and at work. Claimant indicated that he could not do it and get unemployment. The Security Director informed the claimant that he could not fire him because there were procedures to follow. Claimant indicated he would be looking for another job.

"The evidence shows that the Security Director called a meeting for the midnight shift and the claimant did not show up. The Security Director requested that the officers work together. The Security Director felt that the shift was working better. The Security Director testified that the claimant was not very tactful in using his discretion and was not able to get along with his co-workers. The Security Director felt that the problem was more the claimant's than his co-workers.

"The evidence shows that after the claimant's unexcused absence on April 18 and 19 of 1980, the claimant was given a written warning, dated April 21, 1980, from the Security Director concerning his work performance. The claimant felt he had no alternative but to resign. The claimant resigned effective April 28, 1980. The claimant informed the employer that he could not continue in employment because his capabilities were questioned. The employer had provided the claimant with a transfer request form.

"CONCLUSION: From the foregoing findings, it is concluded that the claimant voluntarily left his employment without good cause in connection with the work within the meaning of Chapter 15–1 of the Indiana Employment Security Act."

In assigning as error that the decision of the Review Board was contrary to law, appellant raises both the sufficiency of the facts to sustain the decision and the sufficiency of the evidence to sustain the findings. Ind.Code 22–4–17–12.

### ISSUE

Ind.Code 22–4–15–1 states, "[with] respect to benefits . . . an individual shall be ineligible for waiting period or benefit rights: For the week in which he has left work voluntarily without good cause." The issue involved here is whether the claimant voluntarily left his employment without good cause. In *Gray v. Dobbs House, Inc.*, (1976) 171 Ind.App. 444, 357 N.E.2d 900, this Court discussed a claimant's voluntary termination of employment. That case outlined a two step procedure for determining whether the termination at issue was for

good cause. The Court stated as a general rule to establish good cause justifying voluntary termination, the claimant must show 1) the termination was related to the employment and objective in character, and 2) the reasons for abandoning his employment were such as would impel a reasonably prudent person to terminate under the same or similar circumstances. *Gray, supra*, 357 N.E.2d at 904.

▮ In dealing with an appeal from a review board we do not reweigh the evidence. The findings of the Review Board are conclusive upon us unless reasonable men, considering only the evidence supporting those findings, would be bound to reach a different conclusion. *National Furniture Manufacturing Company v. Review Board of the Indiana Employment Security Division*, (1960) 131 Ind.App. 260, 170 N.E.2d 381, 384.

As the question of work relatedness is not at issue here, the only question is whether a reasonably prudent man would have been impelled to terminate his employment under the conditions involved in this case.

## DISCUSSION

Appellant claims that under the two-part rule enunciated in *Gray*, the Board should have found his voluntary termination was for good cause. He says the adverse treatment from his fellow employees and the unjust reprimands from his employer were the main reasons for his resignation. These factors, he claims, would have impelled a reasonably prudent person under the same circumstances to resign.

Further, appellant cites *National Furniture, supra*, to support his claim that he terminated his employment for good cause. The facts involved in *National Furniture*, however, are distinguishable from those of the present case.

There, the claimant was severely reprimanded because of damage done to the employer's truck through the negligence of a third party. The employee had been driving the truck when it had a flat tire. The truck was then taken to a service station

where the tire was replaced. A short time later the repaired wheel came off, while the claimant was driving it, causing damage to the truck. The employer severely criticized the employee claiming he had not inspected the tire after it had been repaired, and was therefore careless in his duties. No evidence was introduced showing any negligence on the employee's part. Further, the employee was led to believe, based on several statements made in his presence by the employer, that he was going to be discharged. Therefore instead of allowing himself to be fired the employee resigned. In holding the employer had unjustly reprimanded the employee, this court pointed out that there was no misconduct done by the employee in connection with his work. In our holding it was stated:

"Appellant has argued that to hold that a reprimand or criticism constitutes good cause for a person to quit his employment would open the door so as to permit any Indiana employee to quit his job after a reprimand or criticism of his work and to become entitled immediately to unemployment benefits—that such would clearly contravene the purpose and intent of the Indiana Employment Security Act which is to provide benefits for persons unemployed through no fault of their own. *Abshier v. Review Board of Indiana Employment Security Division*, 1952, 122 Ind.App. 425, 105 N.E.2d 902. Burns' Ind.Stat. § 52–1525, cited in said case provides in part as follows:

'The enactment of this measure to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, and to provide for a state employment service is, therefore, essential to public welfare; * * *.'

"We are inclined to agree that if we were to hold that anytime an employee quit his employment merely because of a reprimand, such would perhaps be contrary to the purpose of the Act—however, we are not taking that view. We are of the opinion that all of the circumstances affecting the reprimand in each case of voluntary quitting have to be

considered, *and that if there are other factors involved, such as provocation brought on by unjust reprimands or unjust discrimination between employees or any other evidentiary factors which would have strong influential effect upon the mind of the employee contributing to or causing him to voluntarily quit his employment, such contributing factors might, under certain circumstances, be considered as good cause within the purview of the Act, sufficient to enable the employee voluntarily quitting his job to secure compensation under the Act without the statutory penalty.*" (Emphasis added.)

*National Furniture, supra,* at 385, 386.

█ In the present case we find no evidence of unjust reprimands present which would impel a reasonable person to resign his employment. Instead, the record shows that Marozsan had been unable to work in harmony with his fellow employees. This caused his supervisor first to transfer him from Desk Dispatcher to security guard at the main gate of the University in an effort to smooth relations between Marozsan's fellow workers. Later, when Marozsan began having problems at his new position the supervisor called a meeting of all the security officers in order to talk out problems that had arisen. Marozsan declined to appear at this meeting. Finally, Marozsan's supervisor reprimanded him orally and in writing. The supervisor pointed to lack of judgment, tactfulness, and ability to work in harmony with others as problems surrounding his employment record. Marozsan was put on notice that any incident regarding his judgment, tactfulness and working harmony within the following sixty days *may* cause his termination.

Marozsan claims that nothing he had done as a security guard at the gate warranted this reprimand. However, the record shows he had not followed proper procedure in granting after hour passes to favored students, calling for security escort service for transit of females to St. Mary's College over and above the rules of the university, and excessive fraternizing with students at the gate house. Evidence in the record cites several complaints from people in the community concerning his actions as gate security guard.

There is nothing in the record to show that Marozsan's employer acted unduly harshly or unfairly with him, indeed it seems that every effort was made to point out and try to rectify existing problems. After Marozsan had missed several days work following one reprimand the personnel office had called him to assure him he had not been fired. The final written statement gave him notice that he would be terminated only if he continued in his unsatisfactory manner.

Marozsan, however, chose not to attempt to change during the sixty day notice period given to him. He claimed he was unable to work in a situation where he would have to be aloof from the students. He therefore voluntarily resigned, explaining, "I knew . . . either way I moved . . . anything I done at that gate . . . any least little infraction . . . anything at all . . . one way or another they're going to get me."

The question of whether Marozsan's termination was for good cause is a question of fact rather than law. Therefore the Review Board's finding that there was not good cause for the claimant to leave work will stand unless reasonable men would be impelled to act differently. *National Furniture,* 170 N.E.2d at 396.

█ As this court made clear in *Martin v. Review Board of Indiana Employment Security Division,* (1981) Ind.App., 421 N.E.2d 653, 657 (petition to transfer pending), when dealing with "good cause in connection with the work" in voluntary termination cases, the good cause requirement means the employee's reasons for terminating must be job related and objective in character, *excluding reasons which are purely personal and subjective.* Furthermore, in that case we noted that a stricter good cause standard is applied to those who voluntarily quit work vis-a-vis those who refuse available work. We said,

"[This stricter standard is] in keeping with the intent of the legislature and the

announced purpose of the Unemployment Compensation Act to avoid the menace of unemployment by encouraging people to maintain present jobs rather than to quit them."

*Id.* at 657.

■ It is not the purpose of the Unemployment Security Act to allow employees to terminate their employment merely because working conditions are not entirely to their liking. It is only when the demands placed upon employees are unreasonable or unfair, so much so that a reasonably prudent person would be impelled to leave that the Act will provide compensation to employees who voluntarily quit their jobs.

The burden in this appeal is on the claimant, Stephen Marozsan, to show the conditions of which he complains were such as would impel a reasonable person to terminate that employment. This he has failed to do.

Since the evidence is sufficient to support the Board's findings and conclusion, we affirm the decision of the Review Board.

MILLER, P. J., and YOUNG, J., concur.