Charles H. HORVATH,
Appellant (Claimant),

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION,
John C. Mowrer, David L. Adams, Joe
A. Harris, as Members of the Indiana
Employment Security Division, and
Indiana University (Employer), Appel-
lees.

No. 2–1185–A–372.

Court of Appeals of Indiana,
Second District.

Feb. 4, 1987.

Thomas M. Frohman, Marcy Wenzler,
Legal Services Organization of Indiana,
Inc. Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L.
Greiner, Deputy Atty. Gen., Office of Atty.
Gen., Indianapolis, for appellees.

BUCHANAN, Judge.

### CASE SUMMARY

Appellant-claimant Charles H. Horvath
(Horvath) appeals from a decision of the
Review Board of the Indiana Employment
Security Division (Review Board) denying
him unemployment compensation benefits.
Horvath claims that he is entitled to bene-
fits under the Indiana Employment Securi-
ty Act because he voluntarily left his em-
ployment with Indiana University to accept
previously secured work with another em-
ployer which offered better wages.

We reverse.

### FACTS

The relevant facts indicate that Horvath,
while employed at Indiana University, re-
ceived a job offer from Keith Hamm
(Hamm), the treasurer of Fine Print. Fine
Print offered better wages and hours, so
Horvath terminated his employment with
Indiana University on February 22, 1984 in
order to commence work at Fine Print by
March 1, 1984. Economic conditions pre-

vented him from actually receiving the job until June 18, 1984. He was later laid-off by Fine Print.

Horvath filed a claim for unemployment compensation benefits on April 11, 1985. On May 8, 1985, the claims deputy of the Indiana Employment Security Division denied Horvath benefits. Horvath then requested and received a hearing before a referee. On June 11, 1985, the referee affirmed the decision of the deputy. Horvath appealed to the Review Board which affirmed the referee's decision and adopted the following findings of fact and conclusion:

"FINDINGS OF FACT: The evidence presented indicates that the facts are as follows: [Horvath] was employed by [Indiana University] from November 19, 1982 until February 22, 1984. At the time of separation, [Horvath] was working as a guard at the Fine Art[s] Museum, 20 hours per week.

The Referee further finds that [Horvath] had talked to Fine Print about going to work for them and had been told that there would be a job for him which he would be starting no later than March 1, 1984. [Horvath] quit his employment with [Indiana University] to begin with Fine Print, and then found out that due to monetary problems, there was no position available as of March 1, 1984. Fine Print told him when the economic situation improved, he would be starting with them, and [Horvath] finally started on June 18, 1984 at Fine Print. [Horvath] decided to go to Fine Print because they paid $5.00 per hour compared to around $3.65 per hour at the museum and he would be working 30 hours per week as compared to 20 hours per [week] at the Museum.

"CONCLUSION: The Referee concludes that [Horvath] voluntarily left his employment without good cause in connection with the work within the meaning of [Ind.Code 22–4–15–1 (1986)]. The evidence of record is sufficient for the Referee to conclude that [Horvath] quit his

employment with Indiana University because he felt that he would be beginning work with Fine Print and that work would have offered [Horvath] a reasonable expectation of better wages and hours. [Horvath's] attorney argued that this falls within [IC 22–4–15–1(d)(1) ] [1] which states that 'an individual shall not be subject to disqualification because of separation from his prior employment if he left to accept with another employer previously secured permanent full-time work which offered reasonable expectation of betterment of wages or working conditions and thereafter was employed on said job for not less than ten weeks.' The Referee must concluded [sic] that the offer of employment made to [Horvath] was so vague that the job was not actually secured. There had been a promise of employment at some date in the future but no definite starting date had been given. The Referee concludues [sic] that since there was nothing definite, the job was not previously secured within the meaning of the Act."

*Record* at 37–38.

## ISSUE

Horvath raises one issue for our review: Is the Review Board's conclusion contrary to law?

## DECISION

*PARTIES' CONTENTIONS:* Horvath contends that IC 22–4–15–1(d)(1) is applicable because he terminated his prior employment at Indiana University after he had accepted an express and authoritative offer of permanent and better paying work with Fine Print.

The Review Board responds that Horvath did not have a definite starting date for his position at Fine Print and thus voluntarily terminated his employment at Indiana University without good cause, rendering him ineligible for unemployment compensation benefits.

---

1. Recodified at IC 22–4–15–1(c)(1).

*CONCLUSION:* The Review Board's conclusion, that Horvath's offer of employment was not "previously secured" because it did not contain a definite starting date, is erroneous.

Indiana law provides that when persons voluntarily terminate their employment without good cause, they are disqualified from receiving unemployment compensation benefits. IC 22–4–15–1(a). However, an exception to disqualification of benefits is provided when persons leave their prior employment to accept with another employer "previously secured permanent full-time work which offered reasonable expectation of betterment of wages or working conditions and thereafter [were] employed on said job for not less than ten (10) weeks...." IC 22–4–15–1(d)(1). No Indiana authority interprets the meaning of "previously secured" employment. That language was added to the statute in 1967 as a result of 1967 Ind.Acts, c. 310, s. 19. However, *DeVillez v. Review Bd. of Ind. Employment Sec. Div.* (1965), 136 Ind.App. 642, 204 N.E.2d 369, provides some guidance, even though the decision preceded the change in the statute.

In *DeVillez, supra,* the claimant terminated his employment as a bicycle messenger based on the promise of employment at a furniture factory by a man whom the claimant thought was the foreman at that factory. The claimant was told by the man to "come in the following Monday, that a guy was going into service...." *Id.* at 646, 204 N.E.2d at 371. The appellate court reasoned that the denial of unemployment compensation benefits to DeVillez was proper because:

"for one to resign from a job in reliance on a promise of other employment, that *promise must have some express and authoritative prospect of future employment* before terminating the present employment. In this case appellant's prospect of employment is based on the promise of a man whom appellant had never met and knew only by the name 'Tiny', who claimed to be a foreman at the furniture factory,.... Thus *appellant's prospect of other employment*

*was too speculative and unauthoritative* to justify his hasty resignation, in view of the fact that appellant had several days from the time of his promise of employment by the alleged foreman, in which he could have, and we feel should have as a reasonable man, made inquiry as to the authority of the alleged foreman to grant employment or, in the alternative, appellant could have requested further assurance from the furniture company itself."

*Id.* at 646–47, 204 N.E.2d at 371. (Emphasis supplied).

■■■ The Employment Security Act is given a liberal construction in favor of employees because it is social legislation meriting such construction in order to promote its underlying humanitarian purposes. *Holmes v. Review Bd. of Ind. Employment Sec. Div.* (1983), Ind.App., 451 N.E.2d 83; *Potts v. Review Bd. of Ind. Employment Sec. Div.* (1982), Ind.App., 438 N.E.2d 1012, *trans. denied.* With this purpose in mind, we believe that "previously secured" employment does not necessitate that the job offer include an exact date to commence the future employment, but rather requires a firm offer of employment that is express, authoritative, and certain. This statutory interpretation is consistent with the purposes of the Employment Security Act and the holding in *DeVillez, supra.*

The crux of the dispute in the present case is whether the offer of employment from Fine Print to Horvath was certain as to time. It is not contested that Hamm's job offer to Horvath was express, authoritative, and certain as to wages, hours, and type of position. Additionally, the evidence is uncontradicted that Fine Print did not qualify its offer of employment in any respect.

Ordinary contract principles guide us in determining the certainty of the offer of employment. "On or about" and "on or before" is sufficiently definite and certain to make a contract. *See generally, WILLISTON, A TREATISE ON THE LAW OF CONTRACTS* Section 440 (3d ed. 1961).

Similarly, "no later than March 1" is sufficiently certain to establish a firm offer of employment.

It is also necessary to determine whether unemployment compensation benefits are precluded when the new employment materialized at a later date than the date the job was expected to commence, i.e. by March 1, 1984. The statutory language requires only that once future employment is secured that the claimant be employed at that job for at least ten weeks. IC 22–4–15–1(d)(1). Although Horvath's employment with Fine Print was delayed over three months because of financial difficulties at Fine Print, the delay did not affect the nature of the offer accepted by him. *Accord Township of North Huntingdon v. Unemployment Compensation Bd. of Review* (1982), 69 Pa.Commw. 187, 450 A.2d 768 (job offered for a specific date, but due to labor negotiations new job did not start until four months later, delay did not affect the nature of the offer accepted by claimant, and therefore, claimant entitled to benefits).

In sum, Horvath falls within the exception of IC 22–4–15–1(d)(1) because he left his employment with Indiana University to accept a firm offer of employment with Fine Print which offered better wages. The findings of fact do not support the conclusion reached by the Review Board as a matter of law. Therefore, we must reverse the Review Board's decision. See *DeVillez, supra;* IC 22–4–15–1(d)(1).

Reversed.

SHIELDS, P.J., concurs.

CONOVER, P.J. (sitting by designation), concurs.