Patrick C. LAFFERTY, Appellant–Claimant,

v.

REVIEW BOARD OF the INDIANA DEPARTMENT OF EMPLOYMENT AND TRAINING SERVICES; Michael K. Bonnell, Joe A. Harris, and George H. Baker, as members of the Review Board; and Wal–Mart, Appellees.

No. 93A02–9011–EX–664.

Court of Appeals of Indiana, Second District.

Oct. 22, 1992.

Gregory L. Volz, Legal Services Organization of Indiana, Inc., Evansville and Kenneth J. Falk, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant-claimant.

Linley E. Pearson, Atty. Gen. of Indiana and Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellees.

**1.** *See* U.S. Const. amend. XIV, Section 1; Ind.

## CASE SUMMARY

BUCHANAN, Judge.

Patrick C. Lafferty (Lafferty) appeals the denial of unemployment compensation benefits, claiming the Review Board of the Indiana Department of Employment and Training Services (Board) erred in its determination that he was not entitled to unemployment benefits because he left his position at Wal–Mart without good cause and that the application of the ten week statutory requirement to a claimant who is fired without just cause, violates the equal protection clauses of the United States and Indiana Constitutions.[1]

We affirm.

## FACTS

The facts which support the Board's decision show that in 1987, Wal–Mart hired Lafferty to take care of the floors of its store. In this position Lafferty worked forty hour weeks at $4.55 an hour; his lunch hour was unpaid.

Searching for a new job, Lafferty contacted the Job Service Division of the Indiana Department of Employment and Training Services (IDETS). On May 8, 1990, Mrs. Nally, an employee of IDETS, informed Lafferty of a job opening with ABA Building Management (ABA) and assisted Lafferty by calling ABA on his behalf. ABA offered Lafferty a floor maintenance position similar to the one he held with Wal–Mart. However, the ABA position offered several advantages: the starting wage was $5.00 an hour with the likelihood it would increase to $6.00 an hour within six months, he would have a paid, one half hour lunch break, and the equipment and supplies provided by ABA would make his work easier and increase his efficiency. Lafferty accepted the ABA position. His last day at Wal–Mart was May 9, 1990; the next day he began his new job.

On June 8, 1990, Lafferty was discharged from ABA over an incident involving his having pushed a grocery cart into a customer's cart causing minor damage and a dispute between Lafferty and his supervi-

Const. art. 1, Section 23.

sor over the adjustment of Lafferty's working hours. Lafferty filed for unemployment benefits, and following a hearing on whether he had been properly discharged by ABA, a claims deputy ruled that ABA did not have "just cause" to dismiss him and there would be no disqualification on that basis. Approximately a week later, another claims deputy heard Lafferty's underlying claim for unemployment and ruled that he was not entitled to benefits because he voluntarily left employment with Wal-Mart without good cause in connection with work and had failed to work at ABA for the ten week period required by Ind.Code 22–4–15–1(c) (1990), which decision was affirmed by an administrative law judge (ALJ). On appeal, the Board on September 21, 1990 affirmed the decision of the ALJ:

> "The claimant ... left the employment in order to take a higher paying job with better working conditions. This is a perfectly understandable and rational reason for leaving the employment, however, it is an entirely personal reason for leaving the employment, as it is done to improve the claimant's financial condition. Therefore, the administrative law judge must conclude that the claimant did not have good cause in connection with the work for leaving the employment."

*Record* at 20.

## ISSUES

On appeal, Lafferty raises two issues which we reorder and restate as:

1. Did the Board err in not finding that Lafferty's leaving employment to accept a better paying job constituted "good cause in connection with work" so as to not disqualify Lafferty from receiving benefits under IC 22–4–15–1(a)?

2. Does the application of the ten week requirement to an employee who leaves employment to accept a better paying job and then is fired by the second employer without just cause, violate the equal protection clauses of the United States and Indiana Constitutions?

## DECISION

■ *ISSUE ONE*—Did the Board err in not finding that Lafferty's leaving employment to accept a better paying job constituted "good cause in connection with work" so as to not disqualify Lafferty from receiving benefits under IC 22–4–15–1(a)?

*PARTIES' CONTENTIONS*—Lafferty claims that changes in the unemployment statute indicates that "good cause in connection with work" should include leaving employment to take a better paying job. In addition, Lafferty claims that IDETS' role in helping him find employment with ABA also provides the necessary "good cause" to qualify for benefits. The Board responds that Lafferty was properly denied unemployment benefits because his reasons for quitting his job with Wal-Mart were personal rather than objectively related to his work conditions and thus he did not have "good cause in connection with work" for leaving so as to entitle him to unemployment benefits.

*CONCLUSION*—The Board did not err in concluding that Lafferty left his employment with Wal-Mart "without good cause in connection with work."

The general disqualification provision of IC 22–4–15–1(a) (1990) provides:

> "With respect to benefit periods established on and after July 6, 1980, an individual who has voluntarily left his employment without good cause in connection with the work or who was discharged from his employment for just cause is ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred and until he has earned remuneration in employment equal to or exceeding the weekly benefit amount of his claim in each of eight (8) weeks. If the qualification amount has not been earned at the expiration of an individual's benefit period, the unearned amount shall be carried forward to an extended benefit period or to the benefit period of a subsequent claim."

This disqualification provision is modified by IC 22–4–15–1(c):

"(c) The disqualifications provided in this section shall be subject to the following modifications:

(1) an individual shall not be subject to disqualification because of separation from his prior employment *if he left to accept with another employer previously secured permanent full-time work which offered reasonable expectation of betterment of wages or working conditions and thereafter was employed on said job for not less than ten (10) weeks...."*

(Emphasis supplied).

It is undisputed that Lafferty left employment to take a permanent, full-time position with another employer who offered better wages and working conditions, a situation explicitly covered under the modification provision of (c). Although Lafferty contends that leaving for a better paying job should be interpreted as "good cause in connection with work" so as to not disqualify him from receiving benefits under (a), his interpretation is not supported by the statute's construction. The "modification" provision in (c) clearly provides an *exception* to the general disqualification provision in (a). When an exception is used in a statute it "carves something out of the general provision which, in the opinion of the law-giver, *would be within the general provision if the exception had not been made."* *Taylor v. Phelan* (1946), 117 Ind. App. 40, 47, 69 N.E.2d 145, 148 (emphasis supplied).

Applying that principle it is reasonable to conclude that the legislature intended the modification to carve out of the general disqualification provision an exception for an individual who leaves employment to accept a better paying job. Indeed should the legislature have intended for that reason to constitute "good cause in connection with work" so that individual would *not* be disqualified from receiving benefits under (a), then there would have been no need for the legislature to explicitly include a modification in (c) so that individual would not be disqualified.

Thus, it is unnecessary to examine whether an individual's leaving employment to accept a better paying job is leaving employment "without good cause in connection with work" under (a). By virtue of the statute's construction that reason for leaving employment is without good cause and the individual is disqualified from receiving benefits unless it can be shown that, in addition to having left employment to accept a better paying job, the individual also worked at least ten weeks at the second job. Lafferty concedes that he did not work ten weeks at the new job, but argues that application of the ten week provision to an employee who, like himself, was discharged by the second employer without just cause, is a violation of equal protection. We now address that contention.

■ *ISSUE TWO*—Does the application of the ten week requirement to an employee who leaves employment to accept a better paying job and then is fired by the second employer without just cause, violate the equal protection clauses of the United States and Indiana Constitutions?

*PARTIES' CONTENTIONS*—Lafferty concedes, and we agree, that an employee who leaves employment to take a better paying job and then is dismissed without just cause before working ten weeks for the second employer, is not entitled to receive unemployment benefits,[2] but argues that the distinction between employees who are discharged without just cause based solely on the length of time worked for the second employer violates the constitutional

---

**2.** In his brief, Lafferty concedes:

"In Indiana, when a worker leaves one job in order to take a better, permanent job, that worker will not be eligible for unemployment compensation benefits if he loses the better job, *even though it was through no fault of his own,* unless he worked at least ten weeks in the better job."
*Appellant's Brief* at 4 (emphasis supplied).

"When a worker leaves one job in order to take a better job, there is a special statutory provision that applies to disqualify the worker for unemployment benefits, *even if he loses the better job through no fault of his own,* unless the worker was able to work at least ten weeks in the new, better job."
*Appellant's Brief* at 9 (emphasis supplied).

guarantee of equal protection of the laws. The Board responds that different treatment of the classifications of employees is supported by the state's interest in promoting employment stability and not unfairly penalizing the first employer who was not responsible for the employee's dismissal.

*CONCLUSION*—Denial of benefits to Lafferty due to his failure to work at least ten weeks with his new employer is not a violation of equal protection.

Lafferty theorizes that the application of the ten week rule, without regard to whether an employee was discharged from the second employer for just cause, creates two classifications of employees:

"One class (the statutorily favored class) consists of persons who meet the earnings requirements for drawing benefits, who leave one job to accept previously secured permanent full-time work and work ten or more weeks in the second job before losing it through no fault of their own. That class receives unemployment compensation. The other class (the statutorily disfavored class) consists of persons who meet the earnings requirements for drawing benefits, who leave one job to accept previously secured permanent full-time work, but work less than ten weeks in the second job before losing it through no fault of their own. That class, which includes Patrick Lafferty, is denied unemployment compensation."

*Appellant's Brief* at 9–10.

Lafferty concedes that the distinction between these classifications involves neither a fundamental right nor a suspect classification. *Appellant's Brief* at 11. Thus, the legislature's statutory scheme is to be upheld if it is rationally related to furthering a legitimate state interest. *Vance v. Bradley* (1979), 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171; *Winder v. Review Bd.* (1988), Ind.App., 528 N.E.2d 854.

One of the stated goals of the Indiana Employment Security Act is "to encourage stabilization in employment." IC 22–4–1–1. Seizing upon that policy goal, the Board argues that the state interest in the ten week requirement is that it "encourages

individuals to keep their present job, rather than quit their job to begin work with a second employer.... [and] ... this requirement discourages job-hopping and promotes continuity of employment." *Appellee's Brief* at 10.

The Board advocates another state interest in support of the distinction: "the ten (10) week requirement prevents unnecessary tax rate increases of the past employer who in no way contributed to the job separation of the worker." *Appellee's Brief* at 10–11.

In *Vicari v. Review Bd.* (1991), Ind.App., 568 N.E.2d 1061, *trans. denied,* this court considered an equal protection challenge to the ten week requirement as applied to employees who leave employment to take a better paying job and then are dismissed, *with just cause,* prior to completing ten weeks on the new job. In upholding the different treatment of those who stay on the new job for ten weeks as opposed to those who do not satisfy the requirement, this court declared:

"One of the goals of the Indiana Employment Security Act is to encourage employment stability ... The ten-week requirement prevents excessive job-hopping and is rationally related to the goal of encouraging employment stability."

*Vicari, supra* at 1063; *see also Wade v. Review Bd.* (1992), Ind.App., 599 N.E.2d 630.

The goal of employment stability provides a legitimate state interest for application of the ten week rule to deny Lafferty benefits. *See Wade, supra; Vicari, supra.* Job-hopping, for whatever reason, is always a risky venture entailing the establishment of a new employer-employee relationship which may well prove unsuccessful. Given that Indiana is an employment-at-will state, a new employer has great latitude to discharge an employee no matter how "permanent" that employee thought the work would be upon entering employment. Thus, it seems entirely legitimate for the State to seek to discourage job-hopping by the application of the ten week rule to employees who are discharged

by their second employer for whatever reason.

Also, the State has a legitimate interest in protecting the first employer who would have to bear a greater financial and evidentiary burden if an employee who is discharged before meeting the ten week requirement with the second employer is deemed eligible for benefits because he was dismissed "without just cause." The first employer would have to pay more in unemployment benefits due to former employees being eligible for benefits despite failing to complete ten weeks at the second job. More significantly, to avoid the responsibility of paying benefits, the first employer may be placed in the awkward position of having the burden of proving the second employer did have "just cause" to dismiss the employee. *See Potts v. Review Bd.* (1985), Ind.App., 475 N.E.2d 708, *trans. denied; Moore v. Review Bd.* (1984), Ind.App., 461 N.E.2d 737.

Employment stabilization and protection of the first employer's interest are legitimate state interests supporting the application of the ten week rule to employees who are discharged, with or without just cause, by the second employer.

Judgment affirmed.

SHARPNACK, C.J., concurs.

SHIELDS, J., dissents with separate opinion.

SHIELDS, Judge, dissenting.

I dissent.

Indiana Code 22–4–15–1 disqualifies an individual from receiving unemployment benefits if he "voluntarily left his employment without good cause in connection with the work." IC 22–4–15–1(a) (1992 Supp.). However, there is an exception:

An individual shall not be subject to disqualification because of separation from his prior employment if he left to accept with another employer previously secured permanent full-time work which offered reasonable expectation of betterment of wages or working conditions and thereafter was employed on said job for not less than ten (10) weeks.

IC 22–4–15–1(c)(1) (1992 Supp.). Based upon the legislative and judicial history of these provisions, I agree with Lafferty's claim that the Board erred in determining he left his position with Wal–Mart without good cause in connection with the work; his reasons for leaving Wal–Mart—quantifiably better pay and working conditions— were objective and job-related, thereby meeting the standard set forth in *Gray v. Dobbs House, Inc.* (1976), 171 Ind.App. 444, 446, 357 N.E.2d 900, 903. The *Dobbs House* standard requires a worker to show that his or her reasons for quitting were related to the employment and objective in character, and were such as would impel a reasonably prudent person to quit under the same or similar circumstance.

Indiana's first unemployment compensation legislation, *Acts* 1936, ch. 4, SEC. 6(f), disqualified workers who "left work voluntarily without good cause."[3] Without the "in connection with work" modifier, leaving a job for better pay could have constituted good cause. For example, in *DeVillez v. Review Bd. of the Indiana Employment Sec. Div.* (1965), 136 Ind.App. 642, 204 N.E.2d 369, the job for which an employee quit his existing employment failed to materialize. The Board determined the employee was ineligible, but did so because the employee quit his job without a second job in hand, not because the employee quit one job for a better one.

In 1967, the disqualification section of the unemployment legislation was amended to deny benefits to a worker who "left work voluntarily without good cause attributable to the employer." *Acts* 1967, ch. 310, SEC. 19.[4] The ten-week requalifica-

---

**3.** *Acts* 1936, ch. 4, SEC. 6(f)(1) read:

  Disqualification for benefits. An individual shall be ineligible for benefits:
    (1) For the week in which he has left work voluntarily without good cause or been discharged for misconduct, and for the three next following weeks, (in addition to the waiting period).

**4.** *Acts* 1967, ch. 310, SEC. 19 reads:
  An individual shall be ineligible for any waiting period or benefit rights based upon wages earned from any employer whose employ he

tion rule was enacted at the same time. *Id.*[5] By adding "attributable to the employer," the legislature chose to restrict the circumstances under which benefits would be available to an employee who quit his employment. This result was recognized in *Jones v. Review Bd.* (1968), 143 Ind.App. 64, 238 N.E.2d 291, where this court affirmed the Board's decision denying benefits to a worker who quit one job in favor of another job and who failed to hold the second job for at least ten weeks.

The last amendment relevant to our discussion occurred in 1971, when the disqualification provision was amended to disqualify a worker who has "voluntarily left his employment without good cause in connection with the work." *Acts* 1971, P.L. 355, SEC. 35.[6] Case law subsequent to the 1971 amendment merely emphasizes that a qualifying voluntary termination requires objective good cause related to the employment and does not comment upon whether the change from "good cause attributable to the employer" to "good cause in connection with work" is significant. *See Marozsan v. Review Bd. of the Indiana Employment Sec. Div.* (1982), Ind.App., 429 N.E.2d 986, 990 ("It is only when the demands placed upon employees are unreasonable or unfair, so much so that a reasonably prudent person would be impelled to leave that the Act will provide compensation to employees who voluntarily quit their jobs."); *Wicker v. Review Bd. of the Indiana Employment Security Division* (1977), 173 Ind.App. 657, 365 N.E.2d 787 (Good cause that justifies benefits in a voluntary termination of employment must be related to the employment.); *Gray,* 171 Ind.App. at 447, 357 N.E.2d at 903 (The objective reasons relat-

ed to employment for abandoning employment must be those that would compel a reasonably prudent person to do the same under the same or similar circumstances.); *Geckler v. Review Bd. of the Indiana Employment Sec. Div.* (1963), 244 Ind. 473, 477, 193 N.E.2d 357, 359 (Good cause does not include personal and subjective reasons that are unique to the employee.).

Based in part upon this legislative history, I conclude that under the pre–1971 language, an employee who accepted employment at a $4.55 per hour wage would not be eligible for benefits if the employee quit his or her employment to accept a higher paying permanent job—termination to accept a higher wage would not be for good cause attributable to the employer, because the employee knew his or her wage when he or she accepted the employment. Under the present language, an employee who knows his or her wage when he or she accepts employment, as did Lafferty, and who terminates that employment to accept other higher paying permanent employment, is not necessarily ineligible for benefits. Wages are connected to "work" and, therefore, the employee may be quitting for reasons "in connection with work" if the circumstances are such that no reasonable person could find fault with the quitting.

Thus, the pre–1971 disqualifying language imposed a stricter standard than the present standard, i.e., the "attributable to the employer" standard required the reason for quitting to relate to the *employer* while the "in connection with the work" standard requires only that the reason be *job-related.* Based thereon, I conclude the legislature amended the modifier of "good

has left voluntarily without good cause attributable to the employer or from which he has been discharged for misconduct in connection with his work....

5. *Acts* 1967, ch. 310, SEC. 19 further provided: If an individual leaves work voluntarily without good cause attributable to his employer for the purpose of accepting permanent, full-time work with another employer that offers reasonable expectation of betterment of earnings or working conditions, and thereafter was employed on said job for not less than ten (10) weeks, then upon his becoming un-

employed under non-disqualifying circumstances any previously cancelled wages from the prior employment shall be restored to the individual and any benefits paid under these circumstances shall be paid from the fund and not charged to the experience account of any employer; ...

6. The 1971 amendment did not change the provision that "any benefits paid under these circumstances shall be paid from the Fund and not charged to the experience account of any employer...." *Acts* 1971, P.L. 355, SEC. 35.

cause" from "attributable to the employer" to "in connection with the work" to expand the circumstances constituting good cause or, alternatively, to restrict the disqualifying personal reasons that precluded a determination of good cause. As a result, an employee who leaves one employer to accept other permanent employment that pays a higher wage is not necessarily excluded from benefits. The legislature realized that an employee who leaves his or her job, paying a marginal wage, for another permanent job that pays a higher wage is in a different situation from the employee who quits his or her job without first securing another job merely because he or she is paid the expected wage or, as explained *infra*, from the employee who quits one job to accept another job with the reasonable expectation that the second job will, at some future time, pay a higher wage or provide better working conditions, or, indeed, from an employee who quits his or her job, paying a reasonable wage, for another permanent job that pays a higher wage.

Certainly, there is nothing within the purposes of the unemployment compensation scheme that supports the claim the legislature intended to encourage people not to seek and obtain higher paying jobs. Not disqualifying an employee who leaves one marginally paying job to go to other permanent employment for a higher wage does not encourage the type of job-hopping that contravenes the purpose of unemployment insurance. Changing to a permanent job that improves the employee's position is not censurable conduct or conduct that should be discouraged. In addition, the affirmance of the Board's decision necessarily results in an employee being paid less than the market value for his or her labor, and offers no incentive for employers who pay less than market rate to improve their employees' situation. The form of job-hopping that is to be discouraged is that which inappropriately draws upon the unemployment compensation system, e.g., quitting a permanent job for temporary employment even though it may pay a higher wage or quitting a job for another that is more interesting or where a higher wage or better working conditions are only anticipated, or hopping from one well-paying position to another. Job-hopping in this latter sense is discouraged by the determination the reason for quitting is not good cause in connection with the work, thereby disqualifying an employee for unemployment benefits.

Arguably, the failure of IC 22-4-15-1(a) to require that the less than ten (10) week termination be for good cause on behalf of the employer might be read to indicate a legislative intent to disqualify any employee who quits his or her job—even though he or she quits for good cause, including better wages at a new permanent job—and is terminated within ten weeks of commencing the new job. However, that argument is negated by the policy underlying unemployment insurance compensation. The policy of providing benefits to persons finding themselves unemployed through no fault of their own, including employees who leave one job for better jobs (much in the "American" way) and yet, through no fault of their own, are unable to work for at least ten weeks in the second job, coupled with the mandate that the legislation be given "a liberal construction in favor of employees because it is social legislation meriting such construction in order to promote its underlying humanitarian purposes," *Horvath v. Review Bd. of Indiana Employment Sec. Div.* (1987), Ind.App., 503 N.E.2d 441, 443, compels the determination that the legislature's silence should and must be construed to require that the disqualification resulting from less than ten weeks of employment occurs only if the termination is for cause by the employer or without good cause by the employee.

Thus, if the new employment is terminated by the employer for cause or by the employee without good cause, policy concerns of "fault" dictate a legislative intent that the employee is disqualified from benefits until he or she becomes otherwise qualified for unemployment benefits. However, if the new employment is terminated by the employer without cause or by the employee with good cause, the lack of "fault" is served by not disqualifying the

faultless employee. Incidentally, this construction does not render the requalifying language of IC 22–4–15–1(c)(1) superfluous as suggested by in the majority opinion. I read that subsection as applying to individuals who leave one employment to accept previously secured permanent full-time work with another employer which only offers the reasonable *expectation* of better wages or working conditions. I accept the common meaning of the word "expectation," i.e., a *future* benefit or something that with a degree of probability will occur in the *future*. *See* Random House Webster's College Dictionary (1991). In other words, an individual who quits one employment for another becomes requalified if the second employment was previously secured, is permanent and full-time, and offers a reasonable expectation (in the future) of better wages or working conditions only after the individual is employed on the second job for at least ten weeks. Of course, Lafferty's better wages were not an expectation; they were a reality.

In conclusion, an employee is not disqualified from unemployment insurance benefits as a matter of law merely because the employee is compelled to quit one job to accept another job for better wages or better working conditions. Rather, the issue is whether the voluntary termination is objective in character in that it is related to the work and would "similarly affect persons of *reasonable* and *normal sensitivity*" or is subjective in character in that it is a purely personal and subjective reason which is unique to the employee.[7] *Geckler*, 244 Ind. at 477, 193 N.E.2d at 359. *See Ball v. Review Bd. of the Indiana Employment Sec. Div.* (1984), Ind.App., 464 N.E.2d 1312, 1314 ("The Review Board should not look to the peculiarities of each claimant but should apply an objective standard to determine whether a reasonable, prudent person would leave work under similar circumstances.").

Here, Lafferty found himself in a situation where reasonably, prudent and normally sensitive persons would be compelled to agree that Lafferty was compelled by his disadvantageous economic circumstances—supporting a family on wages that are 65% of the poverty level—to change jobs for a new job that was permanent and full-time and both paid a higher wage and offered better working conditions. Under such circumstances Lafferty's reason for leaving is indeed objective in contrast to the subjective reasons the employee terminated her employment with her first employer in *Vicari v. Review Bd. of the Indiana Dep't of Employment and Training Services* (1991), Ind.App., 568 N.E.2d 1061. In *Vicari*, the Board found that claimant left her first employment "because she was unhappy with the work. The claimant felt that other employees placed work on her desk when she was away from her work station. Further, the claimant felt that the distribution of the work was unfair." *Id.* at 1062. These findings support the Board's conclusion "that the claimant voluntarily left the employment of [her first employer] because

---

**7.** Incidentally, this construction of the statute fulfills our mandate to reject that alternative construction which presents serious constitutional difficulties. *See Fields v. Evans* (1985), Ind.App., 480 N.E.2d 575, 578.

However, I note that neither a suspect classification nor a fundamental right is implicated and, therefore, the appropriate standard of judicial scrutiny of an equal protection challenge to the ten (10) week employment requirement is the rational basis standard review. Under that standard a statutory classification which singles out a group of persons for disparate treatment must be rationally based on differences that are real and not illusory and must be reasonably related to a legitimate state interest; it must not be arbitrary or unreasonable and a fair and substantial relationship must exist between the classification and the purpose of the statute creating the classification. *Johnson v. St. Vincent Hosp., Inc.* (1980), Ind., 404 N.E.2d 585, 600; *Winder v. Review Bd. of the Indiana Employment Sec. Div.* (1988), Ind.App., 528 N.E.2d 854, 856. The legitimate state interests asserted by the Board, encouraging individuals to keep their present job and preventing unnecessary tax rate increases of the past employer, do not appear reasonable. There is nothing reasonable in discouraging an employee from bettering his or her status, in terms of wages or working conditions, when the change is permanent and full-time under conditions that any reasonable person would be compelled to make the change. Similarly, the state cannot have an interest in preventing unnecessary tax rate increases to the past employer when the payments to the employee is not charged to that employer. *See* IC 22–4–11–1(d).

of personal dissatisfaction with her working conditions and without [objective] good cause in connection with the work." *Id.*

In conclusion, it is my opinion the Board erred in denying Lafferty benefits and I vote to reverse the decision of the Board and remand the cause to the Board for further proceedings consistent with this opinion.

