Roy P. Brainard *v.* Unemployment Compensation Commission of Delaware.

*(October* 19, 1950.)

LAYTON, J., sitting.

*Andrew D. Christie* for the plaintiff.

*Frank L. Speakman* for the Commission.

Superior Court for New Castle County, No. 470, Civil Action, 1950.

LAYTON, J.:

Section 5(a) of the Act, 41 Del.Laws, c. 258, as amended by 46 Del.Laws, c. 162, § 4, provides: "An individual shall be disqualified for benefits for the period of unemployment next ensuing after he has left his employment voluntarily without good cause attributable to such employment."

In effect, this means that a voluntary quit for good cause must be for reasons connected with the employment. The Referee to the contrary has found that Claimant left his employment in order to move his wife to a new climate, because of her health, which would constitute a personal reason. A mere glance at the record, however, indicates that the Referee completely overlooked overwhelming evidence that a motivating cause for giving up his job was connected directly with the employment itself, viz: the decrease in earnings to a point where Claimant was not making a living wage. Now, in a State such as this, where the Act requires that a voluntary quit must be for reasons connected with the employment and not upon personal grounds, the evidence not infrequently will reveal that the quitting was for mixed reasons, i. e., considerations connected with the job and personal reasons. In such a case justice would require that the evidence be carefully scrutinized in order to ascertain whether or not the primarily motivating cause for the quit was connected with the employment. If it was then the fact that personal considerations coincided with

the otherwise valid reasons for quitting should be regarded as fortuitous and not be held to bar the right to benefits under the Act. Such a Rule—it might better be designated a means of approach—obviously can be of little aid in deciding a case. Each case must stand upon its own facts.

Moreover, here, before I am free to evaluate the testimony I am faced with two important considerations (1) The Commission has found that the reason why Claimant quit his employment was for personal reasons alone and (2), Sec. 6(i) of the Act provides "* * * the findings of the commission as to the facts, if supported by evidence * * *, shall be conclusive, and the jurisdiction of said (the reviewing) court shall be confined to questions of law."[1] If there is any competent evidence that Claimant's reasons for leaving his job were to move to a new climate because of his wife's health then I am clearly bound by the Commission's finding despite strong evidence to the contrary. After carefully reviewing the record I have come to the conclusion that the Commission's finding was not based upon any competent evidence. My reasons are these. Nearly a year prior to October 31, 1949, Claimant had warned his employer that his earnings were so low that he would be forced to seek other employment. His testimony as to his reasons for quitting is as follows:

"A. I quit because the insulation business that I was selling had got to a point where you couldn't make a wage. You can see from the (financial) statement I made as high as $5,000 (gross)

---

1. It would appear that the quoted section is scarcely apt in a situation such as this when the testimony of Claimant was all in deposition form. Apparently the quoted section is a restatement of the general rule that an Appellate Court will not disturb findings of fact made by the trial Court. This rule is based upon sound considerations not necessary to repeat. But there is a recognized exception to the rule in cases where the lower Court decided the case of depositions and had no opportunity to see and hear witnesses testify. *New York Trust Co.* v. *Riley,* 24 *Del. Ch.* 354, 16 *A.* 2d 772. Such is the case here but in view of the mandatory wording of the Act I shall consider myself bound by it.

when business was good and last year (1949) I made $1,300 ($1,-net), and the expense of operating my car over three counties, approximately 200 miles per month made it unprofitable."

"Q. What was the main reason for leaving this work? A. Lack of earnings because of a slump in the insulation business."

It is important to bear in mind that none of this evidence, including the sharp decrease in earnings, was in any way controverted. Elsewhere Claimant did testify:

"Well at that time (the time of quitting) my wife was suffering from arthritis. We lived on the sea level and the doctor said she should get out of this climate."

This statement, however, was given in answer to the question why Claimant left Delaware, not why he left his employment. Moreover, there is no evidence that the wife's arthritic condition was of recent origin. The inference is that she had suffered with it for some time and it is significant that while Claimant's earnings were relatively high, he continued on with his work in Delaware despite his wife's illness. This compels the conclusion that the motivating cause for leaving his employment was the fact that he was unable to make a living wage. There was further testimony that in October, 1949, Plaintiff's wife had suffered a stroke, but in the absence of evidence that climatic conditions play a part in the treatment of a paralytic stroke, it must be assumed that this further misfortune did not enter into Claimant's decision to leave Delaware, and had nothing to do with his quitting his employment.

Thus analyzed, the record reveals no competent evidence that personal reasons influenced Claimant's decision to quit his job. I am convinced that the motivating cause for leaving his work was his inability to support himself and his wife on his wages and, further, that the decision to leave Delaware was a

purely fortuitous circumstance which coincided with his otherwise valid reason for quitting his work.

■ While the Commission did not have to decide whether or not Claimant was justified in quitting his job because of his meager earnings, I see no reason to remand the matter for a Commission decision on that ground. In view of present economic conditions I will take judicial knowledge of the fact, as no doubt would the Commission, that $1,000 annually is not a living wage and that Claimant was fully justified within the meaning of Sec. 5(a) of the Act in quitting his employment with N. B. Downing & Co.

The decision of the Commission is reversed.