**Patricia E. WHITE, Appellant,**

v.

**SECURITY LINK and the Unemployment Insurance Appeal Board, Appellees.**

Civ. A. No. 94A–03–004.

Superior Court of Delaware,
New Castle County.

Submitted: Sept. 15, 1994.

Decided: Dec. 29, 1994.

Delia Clark, Wilmington, for appellant.

Security Link, Brookhaven, PA, pro se.

## MEMORANDUM OPINION

BABIARZ, Judge.

This is an appeal by Patricia White ("claimant") from a decision of the Unemployment Insurance Appeal Board (the "Board"). In its decision, the Board denied claimant's application for unemployment compensation benefits. For the reasons stated herein, the Board's decision will be reversed and the matter will be remanded to the Board with instructions to grant claimant's request for unemployment compensation benefits.

The facts in this case are undisputed. Claimant is the mother of a two-year-old daughter. She is separated from her husband, the father of her daughter. Claimant's husband is disabled and claimant receives no child support payments from him. Claimant maintained continuous full-time employment with Security Link and its predecessor, Tri State Alarm, for a period of 5½ years prior to quitting in October 1993. Claimant left her job with Security Link when her employer changed her work schedule to a time when claimant was unable to obtain child care for her daughter.

While there was no express agreement between claimant and Security Link regarding the hours that she would be required to work, claimant's working hours for her first five years of employment were from 7:30 a.m. to 4:00 p.m. In August 1993, Security Link changed claimant's schedule to 8:15 a.m. to 5:15 p.m. Claimant, however, was able to make arrangements for the care of her daughter during these working hours. Such care was provided by claimant's sister at no charge to claimant.

In October 1993, Security Link again changed claimant's working hours. Claimant's new hours were from 11:00 a.m. to 7:30 p.m. Mr. Ford, claimant's supervisor at Security Link, advised claimant of her new hours near the end of her shift on a Friday. He demanded that she begin working the new hours on Monday, less than 72 hours later. Claimant told Mr. Ford that she could not work the new hours because she had no one to care for her daughter during the nighttime part of the shift. Claimant also told Mr. Ford that she could not otherwise afford child care for her daughter and that it was not possible to find a baby-sitter over one weekend. Claimant indicated her willingness to continue working her current shift. Mr. Ford responded that claimant had no choice and that she must begin working the new hours on Monday. As a result, claimant quit her job with Security Link.

The change in claimant's working hours resulted from Security Link's decision to extend its hours of operation. Mr. Ford indicated that he had been aware that claimant would have a problem with finding a baby-sitter for the hours required by the new shift and asked three other employees if they would be willing to work the 11:00 a.m. to 7:30 p.m. shift. All three declined. Because no one would voluntarily work the new shift, Mr. Ford had to select someone to fill the shift. Mr. Ford chose claimant for the new shift because he considered her to be the most qualified person for the position. Mr. Ford's testimony confirmed that he wanted claimant to begin working the new shift on Monday.

■ The Court's role in reviewing a decision of the Unemployment Insurance Appeal Board is to determine whether the Board's findings are supported by substantial evidence and are free from legal error. *Ridings v. Unemployment Ins. Appeal Bd.*, Del.Super., 407 A.2d 238, 239 (1979). *See also* 19 Del.C. § 3323(a). In denying benefits, the Board adopted the factual findings and legal conclusions of the Appeals Referee. Therefore, in reviewing this matter, the Court must rely upon the Referee's findings of fact and conclusions of law. *See Sweeney v. Wright*, Del.Super., C.A. No. 93A–10–004, slip op. at 5, Graves, J., 1994 WL 164587 (Mar. 25, 1994); *Boughton v. Division of Unemployment Ins., Dep't of Labor*, Del.Super., 300 A.2d 25, 26 (1972).

In his decision, the Appeals Referee stated that in order to be "eligible for the receipt of benefits, the reasons for leaving must be those inherent in the work or connected with the job itself." The Referee's decision to deny benefits was based upon his conclusion that claimant left her job for a personal

reason, i.e., to care for her daughter, and not for a reason attributable to her employment.

■■■ Claimant argues that the Referee erred in concluding that she left her employment with Security Link "without good cause attributable to such [employment]". *See* 19 Del.C. § 3315(1). The Referee reasoned as follows:

> Leaving a position because the new hours of work would conflict with providing care for a child, is a real and compelling reason to leave employment, but it is a personal reason to the claimant, and as such, is not attributable to the work. There was nothing in the claimant's employment that prompted her decision to leave. She left on her own volition, to take care of family obligations.
>
> I conclude that the claimant did not meet the burden of establishing good cause attributable to the work for leaving her employment. She is disqualified from the receipt of benefits.

(R. at 10).

The statutory provision at issue in this case provides as follows:

> An individual shall be disqualified for benefits:
>
> (1) For the week in which he left work voluntarily without good cause attributable to such work. . . .

19 Del.C. § 3315. In a voluntary quit situation, such as the case *sub judice,* the burden of proof is on the claimant to establish her entitlement to unemployment compensation. *Longobardi v. Unemployment Ins. Appeal Bd.,* Del.Super., 287 A.2d 690, 692 (1971), *aff'd,* Del.Supr., 293 A.2d 295 (1972); *O'Neal's Bus Service, Inc. v. Employment Sec. Comm'n,* Del.Super., 269 A.2d 247, 249 (1970). Good cause for voluntarily quitting employment must be for reasons connected with the employment. *Brainard v. Unemployment Compensation Comm'n,* Del.Super., 76 A.2d 126, 127 (1950).

■■■ Claimant contends that the Referee erred in concluding that "[t]here was nothing in the claimant's employment that prompted her decision to leave." This factual finding is not supported by substantial evidence on the record and, therefore, is rejected by the Court. All of the evidence of record indicates that claimant's resignation resulted from a change in her working hours, a change demanded by her employer. Only one conclusion can be drawn from the evidence of record: claimant's resignation was for a reason attributable to her work, and not attributable to actions taken by her or any third party.

■■■ The more difficult question is whether plaintiff's resignation was for good cause attributable to her work. Good cause for leaving employment "must be such cause as would justify one in voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." *O'Neal's,* 269 A.2d at 249. An employee does not have good cause to quit "merely because there is an undesirable or unsafe situation connected with his employment. He must first do something akin to exhausting his administrative remedies by, for example, seeking to have the situation corrected by proper notice to his employer." *Id.* The "good cause" determination should be judged by the standard of a reasonably prudent person under similar circumstances. *Selk v. D.C. Dep't of Employment Serv.,* D.C., 497 A.2d 1056, 1059 (1985); *see also Inside Radio/Radio Only, Inc. v. Board of Review,* App.Div., 204 N.J.Super. 296, 498 A.2d 791, 793 (1985); *Bean v. Maine Unemployment Ins. Comm'n,* Me., 485 A.2d 630, 634 (1984).

In the instant case, claimant's shift change would require her to report for work two hours and forty-five minutes later in the morning and to leave work two hours and fifteen minutes later in the evening. Standing alone, the change in claimant's working hours does not constitute "good cause" for claimant to leave her job. Absent some other factor, a person would not be justified in leaving the ranks of the employed and joining the ranks of the unemployed due to this type of schedule change. *See O'Neal's,* 269 A.2d at 249.

However, in the instant case there is another factor to consider; the Court must consider the effect of the shift change on claimant's ability to provide for the care of her daughter. Thus, the question presented

is whether an employee quits for good cause attributable to his or her employment under 19 Del.C. § 3315(1) where the employee resigns in response to new working hours established by the employer which conflict with the employee's parental obligations. This is a question of first impression in Delaware.

Other jurisdictions which have considered this question have reached differing results. *See generally,* George L. Blum, Annotation, *Unemployment Compensation: Eligibility as Affected by Claimant's Refusal to Work at Particular Times or on Particular Shifts for Domestic or Family Reasons,* 2 A.L.R. 5th 475 (1992). One line of cases holds that an employee who quits his or her job because a change in working hours conflicts with parental obligations is disqualified from receiving benefits. *Gray v. Dobbs House, Inc.,* Ind.Ct.App., 357 N.E.2d 900, 902–03 (1976); *Rogers v. Doyal,* La.Ct.App., 215 So.2d 377 (1968); *Beard v. State Dep't of Commerce, Div. of Employment Sec.,* Fla.Dist.Ct.App., 369 So.2d 382, 384–85 (1979).

Another line of cases holds that an employee who voluntarily resigns in response to new working hours which conflict with parental obligations is eligible to receive unemployment benefits. *Prickett v. Circuit Science, Inc.,* Minn.Ct.App., 499 N.W.2d 506, 507–08 (1993) (failure to report for new shift assignment because of inability to arrange for care of a dependent child does not constitute "misconduct" for purposes of unemployment compensation); *Zukoski v. Director of Div. of Employment Sec.,* 390 Mass. 1009, 459 N.E.2d 467 (1984) (domestic obligations may constitute "urgent and compelling" reason making a resignation "involuntary" and thereby rendering claimant eligible for unemployment compensation benefits); *Claim of McEvoy,* 89 A.D.2d 1049, 456 N.Y.S.2d 110 (1982) (conflict with domestic obligations based upon a transfer and the possibility of a shift change constituted "compelling" reasons for claimant to quit and satisfied the statutory requirement that voluntary termination be for "good cause").

In *Newland v. Job Service North Dakota,* N.D., 460 N.W.2d 118 (1990), the Supreme Court of North Dakota held that an unemployment compensation claimant who resigned from her job in response to a change in working hours which conflicted with her parental obligations may have quit for "good cause attributable to the employer", a standard very similar to that found in 19 Del.C. § 3315(1). The *Newland* court stated that unemployment compensation law seeks to strike a balance between the rights of the unemployed worker who genuinely wants to work and "the protection of the former employer from quits that have nothing to do with the employer or the employment." *Newland,* 460 N.W.2d at 121. The court also noted that the balance should be struck in favor of the employee because of the remedial nature of unemployment compensation law. *Id.*

In *Newland,* the court recognized that the unavailability of child care, or the prohibitive cost of such care, cannot ordinarily be attributed to an employer in applying the statutory standard. *Id.* at 122. However, the court found that a change in an employee's working hours is "attributable to the employer" and, provided that the change is "substantial", may constitute "just cause" for resignation. *Id.* at 122–23. The *Newland* court concluded that in the case of a shift change which conflicts with an employee's parental obligations, it is appropriate to consider whether the claimant made a good faith effort to preserve his or her employment prior to quitting. *See id.* at 124. This inquiry is necessary in order to determine whether the claimant is within the class of persons entitled to benefits through the unemployment compensation system; i.e, those who are unemployed through no fault of their own.

This Court finds unpersuasive the line of cases which hold that an employee who quits his or her job because a shift change conflicts with parental obligations is disqualified from receiving benefits. These cases fail to recognize that one who quits employment in response to a shift change imposed by his or her employer quits for a reason attributable to the work. The relevant question under 19 Del.C. § 3315(1) is whether such an employee quits for "good cause attributable to such work." (Emphasis supplied). The good cause determination should take into account that under Delaware law it is the primary

duty of parents to provide for the "care, nurture, welfare and education" of their children under the age of 18. *See* 13 Del.C. §§ 501(a) and 701(a). Additionally, it should be recognized that unemployment compensation funds are "to be used for the benefit of persons unemployed *through no fault of their own.*" 19 Del.C. § 3301 (emphasis supplied).

■ Mindful of these considerations, the Court adopts the approach of the Supreme Court of North Dakota in *Newland.* The Court finds that an employee who resigns from employment because a change in working hours creates a conflict with his or her parental obligations, under proper circumstances, may be considered to have quit for good cause attributable to the employment under 19 Del.C. § 3315(1). Mere inconvenience occasioned by a change in working hours is not enough to satisfy the standard. *See O'Neal's* 269 A.2d at 249 ("an employee does not have good cause to quit merely because there is an undesirable or unsafe situation connected with [the] employment"). Moreover, the employee must do something "akin to exhausting his administrative remedies" in order to satisfy the standard. *Id.*

■ In the context of a shift change which causes a conflict with parental obligations, the affected employee must make reasonable efforts to resolve the conflict. This requirement can be satisfied by advising the employer of the conflict in an effort to reach a mutually agreeable compromise and by making reasonable efforts to obtain suitable alternative child care. The reasonableness of the employee's efforts should be evaluated in light of the relevant circumstances, including the availability of suitable child care in the employee's area, the cost of such care, and the amount of time that the employer affords the employee to arrange for such care. In sum, the Court holds that an employee who quits in response to an employer-demanded change in working hours which creates a conflict with the employee's parental obligations is not disqualified from receiving unemployment compensation benefits under 19 Del.C. § 3315(1), provided that the employee makes reasonable efforts to resolve the conflict.

■ In the instant case, it is clear that claimant resigned from her employment with Security Link in response to a change in working hours which would have conflicted with claimant's parental obligations. Although the Referee made no findings on the reasonableness of claimant's efforts to resolve the conflict, this case need not be remanded for further factual findings. Mr. Ford, who appeared before the Referee on behalf of Security Link, testified that he was aware that the new working hours would cause a problem for claimant with regard to finding a baby-sitter. When confronted with the demand that she change her working hours, claimant advised Mr. Ford of the conflict with her parental obligations and indicated her willingness to continue working her current shift. Nevertheless, Security Link demanded that claimant begin working the new shift in less than 72 hours.

In the case *sub judice,* claimant did all that reasonably could be expected of her to resolve the conflict caused by the schedule change. Immediately upon learning of the change, claimant advised her employer of the conflict and attempted to reach a resolution which would allow her to continue working. While there is no evidence of record as to the efforts made by claimant to find alternative child care, the Court finds that the 72 hours given claimant over a weekend did not afford her a reasonable opportunity to find suitable nighttime care for her daughter. Under the circumstances, claimant's voluntary resignation from Security Link was for "good cause attributable to [her] work" under 19 Del.C. § 3315(1).

For all of the foregoing reasons, the decision of the Referee is REVERSED. The matter is remanded to the Department of Labor with instructions to grant claimant's application for unemployment compensation benefits.

IT IS SO ORDERED.