# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| UCHEAMAKA MBA, | : | |
| | : | **C.A. No: K14A-06-008 RBY** |
| _____Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| BAYHEALTH MEDICAL CENTER, | : | |
| INC., | : | |
| | : | |
| Appellee. | : | |

Submitted: November 3, 2014
Decided: December 5, 2014

***Upon Consideration of Appellant's Appeal from
the Unemployment Insurance Appeal Board
AFFIRMED***

**ORDER**

Ucheamaka MBA, *Pro se*.

E. Chaney Hall, Esquire, Greenburg Traurig, LLP, Wilmington, Delaware, and *Pro Hac Vice* Johnine P. Barnes, Esquire, Washington, DC for Appellee.

Paige J. Schmittinger, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware for Unemployment Insurance Appeal Board.

Young, J.

## SUMMARY

Ucheamaka Mba ("Appellant") appeals from a decision of the Unemployment Insurance Appeal Board ("the Board"), denying her application for unemployment insurance compensation. Appellant filed a claim for benefits in January 2014, following a prolonged absence from her position at Bayhealth Medical Center, Inc. ("Appellee"). The heart of this appeal is controlled by 19 *Del. Code* § 3314(2), providing that employees who voluntarily quit their jobs without good cause shall be disqualified from receiving unemployment benefits. The resolution of this matter rests upon whether the Board properly found that Appellant's indefinite leave, and subsequent filing for unemployment insurance, fit the scenario contemplated by the statute. This Court is to reverse the ruling of the Board only if the opinion was not based in substantial evidence, or was the result of legal error. Finding neither to be the case, the Court **AFFIRMS** the decision of the Board.

## FACTS AND PROCEDURAL POSTURE

Appellant began working for Appellee on April 9, 2010, as a Nursing Assistant/Unit Secretary. By her own request, Appellant switched to part-time status, starting on July 18, 2010. On October 24, 2010, Appellant, again of her own accord, asked for an additional reduction in hours, switching to what is known as "relief" status. Citing her husband's travel schedule, Appellant took advantage of Appellee's policy of allowing employees to take a six month, unpaid leave of absence, wherein the employee's position is held open for her. Alternatively, the employee is able to reapply as an internal hire when ready. Appellant was granted such leave on March 6, 2013.

During this time, Appellee was in regular contact with Appellant, discussing, among other things, Appellant's expected time frame for returning to work. Appellant initially stated she would be returning in September or October. Having not heard from Appellant, Appellee's representative, Debbie Hines ("Hines"), contacted Appellant in October 2013. By email dated October 20, 2013, Appellant informed Hines that she would not be able to return to work until December, as her mother had recently passed away. Hines responded that Appellant would be placed on "administrative separation," as the six months had now expired, but that she was free to reapply at any time. Although there is some discord between the parties as to the exact meaning of Appellant's reply email dated October 23, 2013, it can at least be said Appellant acknowledged the separation, promising to be in touch once the funeral arrangements were completed. On October 28, 2013, Appellant received a letter from Appellee, memorializing the administrative separation. This letter did not, however, mention the possibility of re-application. Following this exchange, it is undisputed that Appellant never attempted reinstatement with Appellee.

Upon the completion of the funeral arrangements for her mother, Appellant applied for unemployment insurance benefits in January 2014. This claim was denied, and Appellant appealed. On March 4, 2014, the Appeals Referee determined that Appellant was, indeed, eligible for unemployment benefits. The Referee based her decision on 19 *Del. Code* § 3314(2), holding that Appellant had not been discharged for just cause, and thus, could rightfully receive the insurance payments. Appellee appealed this decision to the Board, which reversed the ruling of the Appeals Referee. This time, the Board applied 19 *Del. Code* § 3314(1), finding that Appellant had

voluntarily left Appellee's employ, lacking good cause. The Board denied Appellant's benefits.

## STANDARD OF REVIEW

For administrative board appeals, this Court is limited to reviewing whether the Board's decision is supported by substantial evidence and free from legal errors.[1] Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion."[2] It is "more than a scintilla, but less than preponderance of the evidence."[3] An abuse of discretion will be found if the board "acts arbitrarily or capriciously...exceeds the bounds of reason in view of the circumstances and has ignored recognized rules of law or practice so as to produce injustice."[4] Where an agency has interpreted and applied a statute, the court's review is *de novo*.[5] In the absence of an error of law, lack of substantial evidence or abuse of discretion, the Court will not disturb the decision of the board.[6]

---

[1] 29 *Del. C.* §10142(d); *Avon Prods. v. Lamparski*, 203 A.2d 559, 560 (Del. 1972).

[2] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. Super. Ct. 1981) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

[3] *Id.* (quoting *Cross v. Calfano*, 475 F.Supp. 896, 898 (M.D. Fla. 1979)).

[4] *Delaware Transit Corp. v. Roane*, 2011 WL 3793450, at *5 (Del. Super. Ct. Aug. 24, 2011) (quoting *Straley v. Advanced Staffing, Inc.,* 2009 WL 1228572, at *2 (Del. Super. Ct. Apr. 30, 2009)).

[5] *Lehman Brothers Bank v. State Bank Commissioner,* 937 A.2d 95, 102 (Del. 2007).

[6] *Anchor Motor Freight v. Ciabattoni,* 716 A.2d 154, 156 (Del. 1998).

## **DISCUSSION**

Appellant asks this Court to reverse the holding of the Board, denying her claim for unemployment insurance. In contemplating Appellant's request, this Court is limited in its review of the Board's decision to examining whether the Board based its findings on substantial evidence, and whether any legal error was committed. Specific to the case at bar, the Court is further asked, soundly within its reviewing authority, to rule upon a question of law: did the Appellant, as a matter of law, leave her position voluntarily and without good cause?[7]

The factual scenario presented by the instant matter, is governed by 19 *Del. Code* § 3314(1), which provides in relevant part: "[a]n individual shall be disqualified for benefits....[f]or the week in which [the individual] left work voluntarily without good cause attributable to such work..."[8] Summarizing Appellant's argument, it is her position that she did not voluntarily leave her job with Appellee, but instead was discharged.[9] The definition of "voluntarily" leaving work has been specifically distinguished from being discharged: "[t]he phrase voluntarily quitting means leaving

---

[7] *State ex rel. Dep't of Labor v. Unemployment Ins. Appeal Bd.*, 297 A.2d 412, 414 (Del. Super. Ct. 1975) ("[t]his Court does, however, review questions of law. The specific question raised by this appeal, i.e. whether the undisputed factual situation amounted to....a voluntary quitting of a job without good cause, is a question of law subject to review").

[8] 19 *Del. C.* § 3314(1).

[9] *See Gsell v. Unclaimed Freight*, 1995 WL 339026, at *1, n. 2 (Del. Super. Ct. May 3, 1995) (where appellant was *pro se* "[t]he Court has attempted to characterize [Appellant's] position as recognizable legal argument").

on one's own motion, as opposed to being discharged."[10] As such, Appellant argues, she should not be disqualified from receiving unemployment benefits. Appellee counters that Appellant did, in fact, leave of her own accord, and further that she lacked the "good cause" mandated by the controlling statute.

The determination of whether Appellant left of her own free will or was terminated by Appellee rests upon what Appellant understood regarding her employment status. The Board, in making its ruling that Appellant withdrew from work voluntarily, relied on a series of communications between Appellant and Appellee. Both parties appear to be in agreement that on or about March 6, 2010, Appellant temporarily made herself unavailable to Appellee. The understanding between the parties, at that point, was that Appellant would return to the active duty pool in a few months time. The Board reviewed an email chain between Appellant and Hines in which Appellant requested additional time off. Although sensitive to Appellant's family emergency, Hines informed Appellant that, given the amount of time she had already been absent, she would now be placed on an "administrative separation." Hines further instructed that Appellant should "reapply," when she was available to work again. Appellee also mailed a letter to Appellant, formalizing the separation.

The meaning of the "administrative separation," and, more on point, what Appellant understood this to mean, is the focal point of the dispute. The Board, in reviewing the communications between the parties, determined Appellant comprehended that she was not being discharged. Since she did not return to work –

---

[10] *Id.,* at *3 (internal quotations omitted).

even after being told she could reapply at any time – but instead filed for unemployment insurance, the Board concluded Appellant left her job voluntarily. Appellant's position, meanwhile, was that the administrative separation was a discharge. She claims that she did not make further contact with Appellee, as she believed herself to be ineligible for work. The Board also did not find any "good cause" for Appellant's voluntary withdrawal. As per the Board, if, as Appellant contends, she truly believed herself ineligible for reinstatement, it was her responsibility to seek out Appellee to find a resolution, before simply leaving work.[11]

In reviewing the Board's decision, the Court is to avoid behaving as a "trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[12] In the present matter, the Board made the factual determination that, at the time Appellant applied for unemployment insurance, she was aware and understood that Appellee had not discharged her by its communications. To the extent this finding was based in "substantial evidence," this Court is to take this conclusion at face value.[13] Moreover, substantial evidence is that

---

[11] *See e.g., Sandefur v. Unemployment Ins. Appeals Bd.,*1993 WL 389217 at * 4 (Del. Super. Ct. Aug. 27, 1993) ("an employee does have an obligation to inform an employer of resolvable problems and to make a good faith effort to resolve them before simply leaving"); *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 785 (Del. 2011) (an employee "must bring the problem to the attention of someone in authority to make the necessary adjustments, describe the problems in sufficient detail to allow for resolution, and to give the employer enough time to correct the problem").

[12] *Johnson v. Chrysler Corp.*, 213 A.3d 64, 66 (Del. 1965).

[13] *Behr v. Unemployment Ins. Appeal Bd.*, 1995 WL 109026 at *2 (Del. Super. Ct. Feb. 7, 1995).

which a "reasonable mind might accept as adequate to support a conclusion."[14]

The Board, with regard to Appellant's understanding of her employment status on "administrative separation," centered its finding upon the written exchanges between the parties. The Board engaged in a weighing of credibility between Appellant's interpretation of the writings, and that of Appellee's. A reasonable trier of fact could, based upon the language used by Appellant, determine that she comprehended that the administrative separation did not permanently terminate her relationship with Appellee.[15] As such, this Court finds that the Board's decision was firmly rooted in substantial evidence.

"Whether this factual situation amounted to a voluntary quitting of the job without cause is a question of law subject to review by this Court."[16] Although factual findings are accepted, where supported by substantial evidence, a Court must next inquire whether the Board applied the law correctly to these facts.[17] Specific to the matter at hand, in order to affirm the Board's opinion, the Court must conclude that Appellant's understanding of her continued ability to reapply, and her subsequent failure to do so, constitute a "conscious intention to leave or terminate the employment."[18]

---

[14] *Oceanport Ind. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. 1994).

[15] *See e.g.* Appellee's Answering Brief at 4 (citing Appellant's October 23, 2013 email to Hines: "**I understand that you will have to file the separation...I will keep in touch with you when I get back**") (internal quotations omitted) (emphasis in the original).

[16] *Gsell*, 1995 WL 339026 at *2.

[17] *Sandefur*, 1993 WL 389217 at *2.

[18] *Gsell*, 1995 WL 339026 at *3.

In examining the facts of this case, the Court finds it instructive to review the *Gsell v. Unclaimed Freight.*[19] In holding that the evidence and factual findings of the Board did not "substantiate a conscious intention to leave or terminate employment," the *Gsell* court was moved by "the absence of evidence that [Appellant] failed to report on a date set by the employer or agreed to by the parties..."[20] The *Gsell* employer did not communicate to the Appellant-employee adequately, the means for her reinstatement. The Appellee here, by contrast, clearly stated that Appellant was free to return to work. Moreover, she was being "separated" only until that time when she was willing or able to be reinstated. The decision to reapply, appears to have been left entirely to Appellant's whim. The Board determined, based upon the substantial evidence before it, that Appellant's status was known and unambiguous to her. Her failure to reach out to her employer was, therefore, correctly interpreted by the Board as a "conscious intention to leave or terminate the employment."[21]

The Board also reasoned that Appellant's voluntary withdrawal from employment was without "good cause." Pursuant to 19 *Del. Code* § 3314(1), where an employee leaves voluntarily, there must be good cause in order to qualify for unemployment benefits. Good cause is understood to mean "such cause as would justify one in voluntarily leaving the ranks of the employed and joining the ranks of

---

[19] 1995 WL 339026 at *1.

[20] *Id.*, at *3.

[21] *Id.*; *see also Behr*, 1995 WL 109026 at *1 (holding that employee voluntarily abandoned his employment where he failed to report when he said he would, failed to contact the employer for several weeks...").

the unemployed."[22] This cause must further be "for reasons connected with employment."[23]

In coming to this conclusion, the Board focused on the requirement that "good cause" arises only after an effort is made by the employee, to resolve the matter motivating her withdrawal.[24] The Board stressed the many instances in which Appellee indicated that Appellant should be in touch. Even if she were unclear about her status during the "administrative separation," the onus was on her to clarify the situation. The Court is satisfied with the Board's interpretation of the governing statute, and its application to the facts at hand. Failing an attempt at clarification, as courts have interpreted the statute to require, Appellant's voluntary quitting was not justified by good cause.

The Court understands Appellant to suggest that the "good cause" for her leave from work was the death of her mother. As an initial matter, the Court recognizes that the "good cause" must be "for reasons connected with employment."[25] Although tragic, bereavement does not fall under this definition. It is necessarily, something *outside* of Appellant's employment. In an attempt to bolster her argument, Appellant

---

[22] *Sandefur*, 1993 WL 389217 at *4.

[23] *White v. Security Link*, 658 A.2d. 619, 622 (Del. Super. Ct. 1994).

[24] *See e.g., Sandefur,*1993 WL 389217 at *4 ("an employee does have an obligation to inform an employer of resolvable problems and to make a good faith effort to resolve them before simply leaving"); *Thompson*, 25 A.3d at 785(an employee "must bring the problem to the attention of someone in authority to make the necessary adjustments, describe the problems in sufficient detail to allow for resolution, and to give the employer enough time to correct the problem").

[25] *White*, 658 A.2d. At 622.

cites to 19 *Del. Code* § 3314(2), which provides in relevant part: "[a]n individual, who is discharged from work because the individual is providing care for that individual's...parent with a verified illness or disability, will not be considered to have been discharged from work for good cause..."[26] Appellant certainly took time off as a result of a parent, but the Court does not read the statute to cover the organizing of funeral arrangements. The statute is plainly inapplicable.

The Board's ruling was supported by substantial evidence. Additionally, in finding that Appellant voluntarily left Appellee's employ without good cause, the Board committed no errors of law. Hence, the Board did not abuse its discretion. The decision is **AFFIRMED**.[27]

## CONCLUSION

For the foregoing reasons, the decision of the Board is **AFFIRMED.**

**IT IS SO ORDERED**.

      /s/ Robert B. Young
        J.

RBY/lmc
oc: Prothonotary
cc: Counsel
   Ucheamaka Mba, *Pro se*
   Opinion Distribution
   File

---

[26] 19 *Del. C.* § 3314(2).

[27] The Appellee, in its Answering Brief, additionally raised the argument that Appellant should be denied unemployment compensation, as a result of having been discharged for just cause, pursuant to 19 *Del. C.* § 3314(2). As this Court affirms the Board's ruling under 19 *Del. C.* § 3314(1), this Court does not address the § 3314(2) argument.