# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEBORAH BENTLEY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N22A-09-001 CEB |
| | ) | |
| A.I. DUPONT | ) | |
| INSTITUTE & | ) | |
| UNEMPLOYMENT | ) | |
| INSURANCE APPEALS | ) | |
| BOARD, | ) | |
| | ) | |
| Appellees. | ) | |

Submitted: October 11, 2024
Decided: January 7, 2025

## MEMORANDUM OPINION

*Upon Appellant's Appeal*
**REVERSED AND REMANDED.**

Deborah Bentley, *Pro Se.*

Matthew B. Frawley, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorney for the Unemployment Insurance Appeals Board.

**BUTLER, R. J.**

This is the Court's ruling on the appeal of Deborah "Debi" Bentley ("Claimant") from a decision of the Delaware Unemployment Insurance Appeals Board ("DUIAB"). For the reasons that follow, the decision of the Board will be reversed.

## BACKGROUND

Claimant worked at the A.I. Dupont Hospital for about 10 years as a patient services representative. She worked there during the Covid pandemic and apparently was on patient floors and working as an "essential worker" during the nationwide shutdown. She contracted Covid, recovered, and went back to work.

When a Covid vaccine became available, A.I. mandated that all employees, including Claimant, get vaccinated or file a certification that they had 1) religious objections to taking the vaccine or 2) a medical basis upon which to seek an exemption from taking the vaccine.

Claimant felt that her reasons for not taking the vaccine did not fit neatly into either category. According to Claimant, "I felt that the risk of getting it was much less than what I had seen happen to those I knew who had adverse reactions."[1] She therefore felt that she could not file for exemption under the terms required by A.I.

---

[1] D.I. 11 Opening Br. by Deborah Bentley at 1 (Aug. 7, 2023), Trans. ID 70572377.

2

She said, "I had hoped by the time I needed to get the shot they would offer daily or weekly testing and masking."[2]

A.I. never made such an offer and instead made clear that employees who refused to get vaccinated or seek an exemption would be terminated. On October 4, 2021, Claimant was emailed by A.I. that "This Thursday, 10/7/2021 is the offboarding date for those associates who have elected to decline the COVID vaccine. In a previous conversation you have stated that your intent to decline the vaccine and therefore the process for offboarding has started."[3] Claimant cooperated with HR in her "offboarding."

Claimant emailed HR inquiring, "Will there be a letter issued prior to my last day stating that I am being terminated and that I am not resigning?"[4] HR responded that "Nemours does not provide separation letters, but we do use a third party administrator which you can use if you work with any agencies that need to confirm your dates of employment."[5] Claimant then "offboarded" from her employment with A.I.

---

[2] *Id.*

[3] D.I. 18 Certified Record (July 18, 2024) at 59, Trans. ID 73712493 [hereinafter R. at page number].

[4] R. at 59.

[5] *Id.* at 58.

3

## A. Claimant's application and process with the DUIAB

Claimant timely filed for unemployment benefits. Her claim was first reviewed by a Claims Deputy. The only record of that process is a note that Claimant wrote saying she was unemployed "for not getting the vaccine."[6] The Claims Deputy reported that "The Department contacted the Employer via email to offer their details regarding this case; the employer provided 'not qualified.'"[7] This department must render a decision based on the information provided by the employer and the claimant. Therefore, Claimant is disqualified from the receipt of benefits." This conclusion appears to have been based solely on the employer's two word, written response "not qualified."

The Claims Deputy applied 19 *Del. C.* §3314(1), which provides that claimants are disqualified from receiving benefits when they quit their job "voluntarily and without good cause."

A number of questions are raised by this rather truncated rendition of the proceedings at the Claims Deputy level. But either party can appeal to an Appeals Referee to set the record straight.

---

[6] *Id.* at 1.

[7] *Id.* It appears that "not qualified" was not actually the response of the Employer, A.I. Hospital, but rather a benefits administrator contracted by A.I. located in St. Louis, Mo. *See id.* at 3. This single entry: "not qualified" are the only words uttered by A.I. or its agents in this record. *Id.*

4

Claimant did file a timely appeal to an Appeals Referee, who took testimony. But only from Claimant. A.I. elected not to appear. Claimant assured the Referee that "I didn't quit. I would have never quit. As a matter of fact, like when I was – when Covid first started, there was several – several weeks before they – the vaccination came out and they mandated it, that I worked at – at the hospital with a mask on like everybody else did, filling in the hours when Covid was it – at its worst. And I had planned to stay there, I liked my job." [8]

The Appeals Referee repudiated the Claims Deputy's decision that Claimant's case fell under the "voluntary quit" disqualification provision of section 3314(1). Rather, the Appeals Referee ruled Claimant had been terminated from employment for "just cause" within the meaning of 19 *Del. C.* §3314(2).

The Appeals Referee's written decision noted that the Employer is a healthcare provider and is

> permitted to implement reasonable policies to meet their goals. As such, this Tribunal finds the Employer's Covid-19 policy is reasonable. Claimant was given the option to apply for a religious or medical exception but did not do so as she did not believe they applied to her.[9]

---

[8] *Id.* at 13-14.

[9] *Id.* at 26.

Since this was essentially her choice, the Referee reasoned, the "Employer was within their rights to terminate Claimant for not following their policy on vaccinations."[10]

There is a lot to unpack here, but it is not the whole story. So we will do our unpacking later, after we hear what the DUIAB did with the record. Recall again, A.I. and its benefits administrator are no longer part of this record. Neither the Appeals Referee nor the DUIAB had the benefit of any input from either of them.

Claimant appealed to the DUIAB. She wanted to clear the record: she did not "voluntarily quit without good cause."[11] Again, Claimant was the only witness. She testified, as she had previously, that she did not quit, she was let go because she didn't get vaccinated and she didn't feel the 2 available excuses on A.I.'s form applied to her.[12] She testified that "they had talked about maybe just letting everybody wear a mask and get tested – Covid tested. I have no – I'm not – I'm not anti-vax and I was not against being Covid tested for as many times as they required."[13]

---

[10] *Id.*

[11] *Id.* at 42.

[12] *Id.* at 45.

[13] *Id.* at 45-46.

**B. The Board's decision**

The Board ruled that Claimant was ineligible for benefits because she had voluntarily quit her job without good cause under section 3314(1). According to the Board, "Claimant made the choice not to receive the vaccine and not to request a medical or religious exemption and, based on that choice, her separation from employment was voluntary."[14]

The Board correctly recognized that in cases where the employee voluntarily quits and nonetheless seeks unemployment compensation, the employee bears the burden of proving that she, 1) raised the issue causing her to quit with a supervisor who failed to act and that 2) efforts at finding an administrative remedy were exhausted. As to Claimant's asserted concerns about the safety of the vaccine, the Board said, "This argument appears, at least to the Board, to be medical concerns. The Board does not understand why Claimant did not seek a medical exemption based on medical concerns."[15]

The Board found that

> Employer's vaccination policy with medical and religious exemptions is reasonable. Claimant could have requested a medical exemption for her concerns. Claimant chose not to request an exemption. As such, Claimant failed to exhaust her administrative remedies.

---

[14] *Id.* at 53.

[15] *Id.* at 54.

It is not clear that, to this day, A.I. Hospital is even aware that Claimant's claim for unemployment compensation has been denied.

## STANDARD OF REVIEW

For administrative board appeals, this Court is limited to reviewing whether the Board's decision is supported by substantial evidence and free from legal errors.[16] Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion."[17] Substantial evidence is "more than a scintilla but less than a preponderance."[18] Where an agency has interpreted and applied a statute, the court's review is *de novo*.[19]

## ANALYSIS

We might begin by considering the two statutory provisions that are at issue. Both result in the disqualification of the claimant from unemployment benefits. The

[16] *Payne v. Unemployment Ins. Appeal Bd.*, 2023 WL 166271, at *2 (Del. Super. Jan. 12, 2023) (citing *Unemployment Ins. Appeal Bd. of Dept. of Labor v. Duncan*, 337 A.2d 308, 309 (Del. 1975)).

[17] *Shipman v. Div. of Soc. Servs.*, 454 A.2d 767, 768 (Del. Fam. Ct. 1982), *aff'd sub nom. Betty J.B. v. Div. of Soc. Servs.*, 460 A.2d 528 (Del. 1983) (citing *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981)).

[18] *Mba v. Bayhealth Med. Ctr., Inc.*, 2014 WL 7009507, at *2 (Del. Super. Dec. 5, 2014) (citing *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981)).

[19] *Liberty Mut. Ins. Co. v. Silva-Garcia*, 2013 WL 4507847, at *4 (Del. Super. Aug. 22, 2013*), aff'd sub nom. LM Ins. Corp. v. Silva-Garcia*, 93 A.3d 654 (Del. 2014) (citing *Anchor Motor Freight v. Ciabattoni,* 716 A.2d 154, 156 (Del.1998))

Board ruled that Claimant was disqualified by reason of section 3314(1) because she quit her job "voluntarily" and without "good cause."[20] Good cause is established where "(i) an employee voluntarily leaves employment for reasons attributable to issues within the employer's control and under circumstances in which no reasonably prudent employee would have remained employed; and (ii) the employee first exhausts all reasonable alternatives to resolve the issues before voluntarily terminating his or her employment."[21]

An example of a case that we might all sympathize with involved a bus driver who quit his job because the kids on the bus were uncontrollable and neither the bus company supervisor nor the school principal did anything to control the unruly youngsters.[22] Even though he quit voluntarily, he had "good cause" for doing so within the meaning of the statute and was able to receive unemployment benefits.[23]

In cases seeking benefits by employees who voluntarily quit, the burden of proving "good cause" is on the employee.[24] This is the provision upon which the Board relied in finding that Claimant here was disqualified from benefits.

---

[20] R. at 54.

[21] *Thompson v. Christiana Care Health System,* 25 A.3d 778, 783 (Del, 2011).

[22] *O'Neal's Bus Service v. Employment Sec. Commission,* 269 A.2d 247, 249 (Del. Super. 1970).

[23] *Id.* at 250.

[24] *See, e.g., MRPC Financial Management LLC v. Carter,* 2003 WL 21517977, at *4 (Del. Super. June 20, 2003) ("In a voluntary quit situation, the employee bears the burden of proving good

The other provision that may apply here is section 3314(2), involving terminations of employment for "just cause." "Just cause" is defined as "a wilful or wanton act or pattern of conduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct."[25] This is usually an uncomplicated analysis: for example, an employee who steals while on the job is disqualified from unemployment benefits.[26] As the Appeals Referee noted in this case, "Ordinarily, conduct is not considered willful or wanton absent a prior unequivocal warning placing the employee on clear notice certain conduct may result in termination if continued."[27]

In cases seeking benefits by employees who were terminated for just cause, the burden of proof is on the employer to show just cause.[28] Although this was the holding of the Appeals Referee, that opinion was not endorsed by the Board.

---

cause existed to justify quitting."); *White v. Security Link*, 658 A.2d 619, 622 (Del. Super. 1994); *Longobardi v. Unemployment Ins. Appeal Bd.*, 287 A.2d 690, 692 (Del. Super. 1971) (same).

[25] *Avon Prods., Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del. 1986) (citing *Abex Corp. v. Todd*, 235 A.2d 271, 272 (Del. Super. Ct. 1967)).

[26] *E.g., Jones v. Nat. Dairy Prods. Corp.*, 2017 WL 5054260, at *2 (Del. Super. Nov. 1, 2017) (citing *Mack v. RSC Landscaping*, 2011 WL 7078291, at *2 (Del. Super. Dec. 22, 2011)).

[27] R. at 26.

[28] *See, e.g., Carter,* 2003 WL 21517977, at *4 (citing *Todd*, 235 A.2d at 272) ("In a termination situation, the employer has the burden of proving just cause."). *Accord, Bowers v. Professional Transportation, Inc.,* 2015 WL 2402827, at *2 (Del. Super. May 11, 2015).

10

Again, either of these analytical frameworks get us to the same place: they resolve the question whether the claimant is disqualified from receiving unemployment benefits. But how you get there matters and how we got here is a problem.

## 1. Claimant did not "voluntarily" quit her job

The factual evidence is uncontradicted: the Claimant did not quit her job, voluntarily or otherwise.[29] The Board's analysis using the "voluntary quit without good cause" standard is legally unsustainable.

The Appeals Referee did not believe Claimant had voluntarily quit, holding that she did not quit but was properly terminated for just cause. The Board's finding that she did quit is belied by the Appeals Referee,[30] Claimant's uncontradicted record testimony,[31] and the email from A.I. stating that she was being "offboarded."[32] Under the very best version of the facts to support the Board's ruling, we might say

---

[29] Before the Board, the Appellant testified, "I didn't quit; I had an end date if I didn't – if I didn't subject myself to having the Covid vaccination." R. at 42. In an e-mail about her appeal to the Board, the Appellant wrote, "I did not quit my job. I was terminated by Nemours for not wanting to have an experimental vaccine injected into my body." *Id.* at 29.

[30] The Appeals Referee noted, "Employer was within their rights to terminate Claimant for not following their policy on vaccinations." *Id.* at 26.

[31] Before the Board, Appellant testified, "I didn't quit without good cause." *Id.* at 45.

[32] In an e-mail from October 4, 2021, an employee of Appellee wrote the following to the Appellant: "In a previous conversation you have stated it is your intent to decline the vaccine and therefore the process for offboarding has started." R. at 59.

that the Claimant herself created the condition (by not signing on for a religious or medical exemption) that caused the Employer to fire her, but that is not the same as saying she voluntarily resigned without good cause.

Although the Court must accept the factual findings of the Board that are supported by substantial evidence, the facts of Claimant's departure are not in dispute. The finding that claimant resigned voluntarily from her job is not supported by any evidence whatsoever. Claimant was offboarded, just as A.I. told her she would be. The Board spent some time considering whether her quitting was for "good cause," concluding that it was not, but passed the important term "voluntary" as if it was not there at all.

That might end the matter, but we are left with the question whether Claimant was terminated for just cause and therefore disqualified from benefits anyway. The reader may wonder why the Court does not simply affirm the Board's conclusion that Claimant is disqualified, albeit for a different reason. There are at least three reasons this is not appropriate.

First, the Court's role is to review the decisions of the Board, not those of the

Appeals Referee or to make up its own rationale for resolving a dispute.[33]  There is

no decision that Claimant was fired for just cause for the Court to review.[34]

Second, an appeal may be decided on a different rationale only if the alternate

rationale was fairly presented to the court below.[35]  Here, there is no record at all

that any party argued *either* that the Claimant voluntarily quit without good cause *or*

that she was fired for just cause.  The Board's ruling of "voluntary quit" was spun

up by the Board itself without input from the parties.

Third, whether Claimant was fired for just cause is not on particularly strong

ground either. The Appeals Referee found that the employer had good reason to

demand that Claimant get vaccinated.[36]  But the Referee did not explain why an

accommodation that was being made available for those employees who rejected the

vaccine on religious or medical grounds would not be made for those refusing on

"personal"[37] grounds.  It may well be that the Referee was hampered in his analysis

---

[33] *See* 19 *Del. C.* §3323(a) (judicial review is from *final* decisions of the Board).

[34] The Board decided that the "Claimant had voluntarily left her employment without good cause connected to her work." R. at 54.

[35] *See, e.g., Unitrin, Inc. v. American General Corp.,* 651 A.2d 1361, 1390 (De. 1995); *RBC Capital Markets v. Jarvis*, 129 A.3d 816, 849 (Del. 2015) (citing *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 647 (Del. Super. 1993)); *Tiger v. Boast Apparel, Inc.*, 214 A.3d 933, 937 (Del. 2019) (citing *Jarvis*, 129 A.3d at 849).

[36] R. at 26.

[37] In front of the Appeals Referee, the Appellant testified, "I was only saying 'no' only for the – for my personal reasons; it wasn't that I was just being defiant or their rules or anything and that I

by the absence of the Employer from the proceedings,[38] but that was not Claimant's fault. The Employer had the burden of proving just cause: it is entirely unclear whether the scant record before the Appeals Referee was sufficient to make his ruling on just cause.

Clearly, the record suffers from the absence of the Employer as a litigant in this matter.[39] Important issues are raised, by a *pro se* claimant with no opponent. The Employer added no input from which the dialectic may be synthesized.[40] The

---

worked up until that point being around people every day that could potentially have Covid." *Id.* at 15.

[38] The Appeals Referee noted for the record that "No one from the Employer has chosen to – to appear despite adequate notice and be given – and been – and have been given an additional 16 minutes now to appear since the time was to start for this hearing." *Id.* at 8.

[39] *See Richardson v. Bd. of Cosmetology & Barbering of State*, 69 A.3d 353, 359 (Del. 2013) (remanded to an administrative agency to develop the record and allow a litigant to be heard); *Crews v. Sears Roebuck & Co.*, 2011 WL 2083880, at *4 (Del. Super. May 11, 2011) (quoting *Sprung v. Selbyville Cleaners*, 2007 WL 1218683, at *1 (Del. Super. Apr. 23, 2007)) ("The efficiency and effectiveness of our judicial system relies heavily on the diligent actions of those involved in legal disputes. Filing deadlines are in place to promote such judicial efficiency. Because of this, the inexcusable failure of a party to respond when required to do so cannot be treated lightly by this Court."); *see also Byrd v. Westaff USA, Inc.*, 2011 WL 3275156, *1-2 (Del. Super. July 29, 2011) (reversed and remanded the Board's decision after the employer-appellee failed to appear); *Lafferty-Eaton v. T.D. Bank NA*, 2013 WL 5945054, *1-2 (Del. Super. Nov. 1, 2013) (same).

[40] *Anderson v. Frederick Ford Mercury, Inc.*, 2011 WL 1887106, at *2 (Del. Super. May 4, 2011) ("A fundamental tenet of the adversarial process is the opportunity of both parties to litigate fully the claims implicated in their dispute."); *Keystone Fuel Oil Co. v. Del-Way Petroleum, Inc.*, 364 A.2d 826, 828 (Del. Super. 1976) (public policy favors that each litigant "have his day in court. A trial on the merits is considered superior to a default judgment."); *see also Moore v. Merit Emp. Rels. Bd.*, 2023 WL 2808085, at *3 (Del. Super. Apr. 6, 2023), *aff'd*, 308 A.3d 168 (Del. 2023) ("The onus is not on the Court, however, to identify appealable errors in the record below.").

14

Court believes the proper route is to decide the singular issue before it and leave the Board to determine whether and how it will proceed from here.

The Court finds, on this record, that the Board's conclusion that the Claimant was disqualified from benefits by reason of 19 *Del. C.* §3314(1) because she voluntarily quit without good cause is not supported by substantial evidence and is therefore reversed. The Court remands this matter to the Board for further proceedings not inconsistent with this Opinion.

**IT IS SO ORDERED.**

/s/ Charles E. Butler
Charles E. Butler, Resident Judge